PATRY, Respondent, vs. THE CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Appellant.

*May 24 — June 21, 1890.*

*Railroads: Carriers: Putting off passenger not paying fare: Punitory damages: Reversal of judgment.*

1. Plaintiff, having a ticket over another road, got by mistake upon one of the defendant's trains which did not go to her destination. The conductor put her off at a flag station for both roads. The depot at such station was closed at the time, and a dwelling-house near by was also temporarily locked. The plaintiff and her two children were obliged to wait for a train several hours without shelter, and her exposure was followed by a severe illness. The testimony was conflicting as to whether she showed her ticket to the brakeman on

entering the defendant's train, and also as to whether the conductor demanded payment of fare. *Held:*

(1) If she showed her ticket to the brakeman, the conductor was not justified in putting her off at the flag station unless that was a reasonably safe and convenient point from which she could most expeditiously reach a train on the proper road.

(2) If she did not show her ticket to the brakeman, and if the conductor demanded fare of her which she did not pay, he was justified, under sec. 1818, R. S., in putting her off at the flag station. If that station was not a " usual stopping place " it was at least " near a dwelling-house," and it is immaterial that the occupant of such house was temporarily absent and the house closed while the plaintiff was there.

(3) There being no evidence that the conductor acted in a reckless, wanton, or insulting manner, or that he was influenced by malice or any other improper motive, the plaintiff could not recover punitory damages.

2. An error in authorizing the jury to give punitory damages in a case in which they are not recoverable will work a reversal where it cannot be determined from the verdict whether or not it includes such damages.

APPEAL from the Circuit Court for *Chippewa* County. This action was commenced in September, 1888, to recover damages for personal injuries alleged to have been sustained by the plaintiff by reason of the negligence of the agents and employees of the defendant company operating a train of cars upon its railroad. At the time of the alleged injury (November 14, 1885) the plaintiff resided eight miles from Boyd, a station on the Wisconsin Central Railroad, understood to be about eighteen miles east or northeast of Chippewa Falls. . She was then thirty-three years old, was a healthy woman, and had a husband and several children. On the morning of the day last aforesaid, she purchased a ticket on said Central Railroad to Eau Claire and return, and went to Eau Claire on that railroad. She had with her two of her children,— a girl six years old, and another eighteen months old. The Central road going from Boyd to Eau Claire passes through Chippewa Falls and a flag-

station called Badger Mills, about midway between Eau Claire and Chippewa Falls, and distant some five or six miles from each of those places. The railroad of the defendant company (which for convenience will be called the Omaha road) extends from Eau Claire to Chippewa Falls and beyond. It is understood that the two companies occupy the same depot in common at Eau Claire. At Badger Mills the two roads are within twenty feet of each other, but at Chippewa Falls the two depots were a considerable distance apart at that time. The Omaha road from the latter point diverges from the Central road to the northwest, and does not go to Boyd.

About noon of November 14, 1885, the plaintiff went to the depot at Eau Claire, and upon a train on the Omaha road, going north to Chippewa Falls and beyond. She testified that, as she went upon the train, she showed the conductor thereof her return ticket on the Central road, and he assisted her to go upon the train with her children. Her counsel concedes, however, that this was a brakeman, instead of the conductor. The conductor testified that he did not see the plaintiff until after the train started. The brakeman testified that he saw the plaintiff at the train, and asked her if she was going to Chippewa Falls, and she answered, "Yes;" also, if she had a ticket on the Omaha, to which she answered "Yes;" and that he then assisted her to go upon the train. He further testified that he did not require her to show her ticket (as he should have done) because she was burdened with her children and several bundles, and he thought it would be inconvenient for her to do so.

Soon after the train left Eau Claire, the conductor called upon the plaintiff for her ticket, and she presented to him her return ticket to Boyd on the Central road. He did not retain it. The plaintiff testified that he said nothing to her, or nothing she understood. It appears that the plaint-

iff is a French woman, and could neither speak nor understand the English language. She further testified that, when the train stopped at Badger Mills, the conductor took her little girl by the hand and led her out of the car. She followed them, and he helped her. off the cars with her children and bundles, saying nothing to her, and the train moved on. The conductor testified that when plaintiff presented her ticket he told her he could not honor it, and she would have to pay her fare to Chippewa Falls, and that she said in broken English she had no money; that he told her if she had no money, she had better get off at Badger Mills, and take the Central train there, on account of the location of the depots at Chippewa Falls, because at the latter place she would require money to get to the Central depot. The brakeman testified that, by direction of the conductor, he assisted her to get off the train with her children and packages.

Badger Mills was a flag station for both roads. Up to the preceding February the Central company kept a man there to flag trains on that road when there were passengers for such trains. At that time the flagman died, after which either his widow, or persons who desired to go upon the road, would flag approaching trains. The Central company had a depot there, but it was closed. There was also a dwelling-house near the depot and tracks, which, at the time the plaintiff was left there, was occupied as a residence by the widow of the flagman, but at that particular time she was absent a few hours at the house of her son, half a mile distant, and her house was closed and locked during the time plaintiff was there. The depot was also closed and fastened. The only other building there was an open shed. There were several other dwelling-houses within about half a mile of the depot, but none in sight of it.

The weather seems to have been quite cold and inclement, and the plaintiff and her children were not very warmly

clad. She tried to get into the depot, and into the dwelling-house, but failed. She went into the shed, but afterwards left it and wandered up and down the track looking for assistance. She wrapped her shawl about her infant to keep her from freezing. She was greatly frightened by her situation, and feared they would all perish. After she had been there about an hour,— perhaps a little less,— a gentleman came along the track to where she was. She could not make him understand her by talking to him, but showed him her return railroad ticket, which explained to him the situation. He humanely remained with her until a train from Eau Claire upon the Central road approached. He flagged and stopped it and put her and her children on board of it. It is a matter of regret that the name of this gentleman is not disclosed, for it would be a pleasure to record it here. When the plaintiff got on the train her infant was chilled almost or quite to the point of insensibility, but the conductor and a lady passenger soon restored it by rubbing its limbs, and it does not appear that any bad results followed. The plaintiff met her husband at Boyd. She was very ill, but was so far restored by stimulants or warm drinks that she was able to ride home in a wagon the same evening. The testimony shows that she was seriously ill after that time for many days, and tends to show that she still suffers from the shock to her nervous system. She was five months advanced in pregnancy at the time, but had no miscarriage, and it does not appear that the child of which she was delivered four months later was injured by her exposure.

The conductor of the Omaha train, who thus left the plaintiff at Badger Mills, testifies that shortly thereafter the company questioned him concerning the affair, and the brakeman testifies that he was asked about it two or three weeks after it occurred, but does not say by whom. This is all the testimony tending to charge the defendant com-

pany with knowledge, before this action was brought, of the conduct of such conductor and brakeman on the occasion in question, or of what the plaintiff claimed their conduct to have been. The court, among other things, charged the jury as follows: "If you believe from the evidence that the defendant is liable, and that the wrongful act was done in a reckless or wanton manner, or that there were circumstances of aggravation in the conduct of defendant's servants, you will not be limited in assessing damages to the actual or compensatory damages, but may give the plaintiff a further sum as exemplary damages by way of punishment for the wrongful act and as an example to others; and for such damages you may assess such sum as you deem just under the circumstances of the case as shown by the evidence."

Motions for a nonsuit, and that a verdict be directed for the defendant, were respectively denied by the court. The jury found for the plaintiff and assessed her damages at $5,000. A motion by defendant for a new trial was denied, and judgment entered for the plaintiff pursuant to the verdict. The defendant appeals from the judgment.

For the appellant there was a brief by *Jas. H. Howe* and *L. J. Rusk,* and oral argument by *Mr. Howe.*

For the respondent there was a brief by *Anderson & Bowe,* and oral argument by *J. B. Anderson.*

LYON, J.   I. The rulings of the circuit court denying the respective motions of the defendant for a nonsuit, that the court direct a verdict for the defendant, and for a new trial, raise the question whether the testimony was sufficient to authorize the court to submit to the jury the question of defendant's liability in the action. The defendant is thus liable if the negligence or wrongful acts of its conductor or brakeman on the train from which plaintiff was put off at Badger Mills was the proximate cause of the injuries of

which she complains, unless she also was guilty of negligence which contributed directly to such injuries. On the subject of the alleged contributory negligence of the plaintiff, it is sufficient to say that, if the testimony tends to prove any such negligence on her part, the same was not conclusively proved, and hence, if the testimony was sufficient to raise that question, it was properly submitted to the jury. If not sufficient to raise it, the defendant has no reason to complain because the same was so submitted.

Were the injuries complained of directly caused by the negligence or wrongful acts of the conductor or brakeman or both? The learned circuit judge instructed the jury, correctly no doubt, that it was the duty of the plaintiff to ascertain before entering the train that it was the one she desired to take, and if she refused to pay her fare the conductor had a right to put her off the train; also that it was her duty to make herself understood, and the defendant company was not required to provide an interpreter for her. The accuracy of these propositions does not seem to be controverted by counsel for the plaintiff.

The testimony of the plaintiff tended to prove that she exhibited her return ticket on the Central road to the brakeman, and that he put her on the train. If these facts were proved she was lawfully on the train, and it was the manifest duty of the company either to return her, without charge for fare, to the place from whence she started, or to leave her at some other point where she could most speedily, conveniently, and safely reach a train of the Central road which would take her to her destination at Boyd. If she was thus on the defendant's train because of the mistake of the brakeman in respect to her ticket, she was not subject to the provisions of sec. 1818, R. S. That section is as follows: "If any passenger shall refuse to pay his fare, it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage off the cars, on

stopping the cars and using no unnecessary force, at any usual stopping place, or near any dwelling-house, as the conductor shall elect." If, therefore, the jury found that she showed the brakeman her ticket when she went upon the train, it was a question of fact for the jury to determine whether, by putting her off the train at Badger Mills, the railway company performed its duties and obligations to her as above stated. If the company failed to do so, the plaintiff is entitled to recover damages for any injury she suffered by reason of such breach of duty.

If, on the other hand, the jury believed that she did not show her ticket to the brakeman, as the latter testifies, then she was subject to the provisions of said sec. 1818; and, if she refused or neglected to pay her fare on demand of the conductor, he had a right to put her off the train at any place answering the requirements of the statute. In that case, however, she was still a passenger upon the train, and entitled to be treated as such in all matters pertaining to her safety.

There is considerable controversy in the arguments of counsel as to whether Badger Mills is such a place as is described in the statute. The same being a place at which trains did not stop unless signaled to do so, it may be doubtful whether it is a "usual stopping place," within the meaning of the statute. But however that may be, the plaintiff was put off the cars near a dwelling-house which was at the time occupied as a residence. This fact fulfills the alternative requirement of the statute, notwithstanding the occupant of such house was temporarily absent therefrom and the house closed during the time the plaintiff was there. Hence we conclude that if the plaintiff did not show her ticket to the brakeman, but went upon the train by reason of her own mistake, and neglected or refused to pay her fare when the conductor demanded it, the latter was justified in putting her off the train at Badger Mills.

Whether the conductor demanded her fare or not is a disputed question of fact in the case, to be determined by the jury.

The foregoing rules may be thus summarized : If the plaintiff showed the brakeman her ticket, the conductor was not justified in putting her off the train at Badger Mills, unless that was a reasonably safe and convenient point from which she could most expeditiously reach a train on the Central road. It is quite immaterial that the conductor did not know that she had shown her ticket to the brakeman. The company would still be bound by the act of the brakeman, and liable for any injury which might befall the plaintiff by reason of his mistake. If the plaintiff did not exhibit her ticket to the brakeman, and if the conductor demanded fare of her which she did not pay, he was justified in putting her off the train at Badger Mills, and the company is not liable in this action.

There may be passages in the charge of the learned circuit judge to the jury which do not accord with the foregoing rules. If any such occur therein, they can readily be corrected when the cause is again tried. It is clear, however, that there was sufficient testimony to make it the duty of the court to submit to the jury the question of defendant's liability, under proper instructions.

II. The court erred in instructing the jury that in certain contingencies they might award the plaintiff exemplary damages. There is no testimony in the case tending to show that the conductor acted in a reckless, wanton, or insulting manner, or that he was influenced by malice or any other improper motive. On the contrary, it conclusively appears that he acted throughout in a considerate and gentlemanly manner, and in the belief that he was only discharging his imperative duty to his employer. Such being the facts, as a matter of course this is no case for the infliction of punitory damages, and would not be, even were

the action against the conductor instead of the company. But if the conductor so treated the plaintiff as to be liable to punitory damages, were the action against him, still under the rule which prevails in this state, established in *Craker v. C. & N. W. R. Co.* 36 Wis. 657, *Bass v. C. & N. W. R. Co.* 42 Wis. 654, and other cases, the defendant company is not so liable, for the reason that there is no testimony tending to show any ratification by it of the acts of the conductor. Under the above cases, had the company retained the conductor in its employ after having been fully informed of his conduct as the plaintiff claims and the jury found it to have been, that would have been a ratification of his conduct, which would subject the company to liability for punitory damages. But there is no testimony in the case tending to show the existence of these essential facts.

Counsel for plaintiff argued that the jury would have been justified in assessing the plaintiff's compensatory damages at $5,000, and claims therefrom that the error in authorizing them to give exemplary damages should not work a reversal of the judgment. We do not assent to the proposition that the jury might properly have assessed compensatory damages at $5,000, and did we assent thereto it would not save the judgment. There are no means of ascertaining whether the damages include punitory damages or not, and the fact that it may include them renders the error of the court material and fatal to the judgment.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.