NASHVLLE STREET RAILWAY v. GRIFFIN.

(*Nashville.* January 27, 1900.)

1. STREET RAILROADS. *Regulation requiring passengers to enter cars within transfer station.*

A regulation of a street railway company that requires persons desiring to take its cars at a transfer station to enter the cars within, and not beyond, the prescribed limits of the station, and for their failure to do so declaring their right of transportation forfeited except upon payment of an additional fare, is reasonable, and, in its proper and reasonable enforcement, will justify the ejection of a passenger who has entered the cars in violation of it and refuses to pay the required additional fare. (*Post, pp. 88, 89.*)

2. SAME. *Enforcement of valid regulation unreasonably and oppressively.*

It is an unreasonable, arbitrary, and oppressive enforcement of a proper and reasonable regulation requiring persons to enter street cars within a transfer station, or for failure to do so to pay an additional fare, for the company's agents to eject one who, to their knowledge, had paid regular fare, because he had entered a car, in which there was abundant room, while it was standing a few feet beyond the station line, upon his refusal to pay an additional fare; and for such ejection the company is liable in damages to the party ejected. (*Post, pp. 89–91.*)

Case cited: Turner *v.* Railroad, 100 Tenn., 213.

3. SAME. *Right to eject passenger refusing to pay fare not waived, when.*

By starting its car before demanding fare, a street railway company does not waive its right to eject a passenger who unlawfully refuses to. pay fare, especially when the demand of fare was made simultaneously with starting car, and the circumstances were such as to justify the expectation that fare would be paid. (*Post, pp. 87, 88.*)

20 P—6

Nashville Street Railway *v.* Griffin.

4. DAMAGES. *Vindictive, allowable.*

For the unwarranted and arbitrary ejection of a passenger from a street car in a rough, rude, insulting, and violent manner, vindictive damages are allowable; and although the injuries inflicted are not very serious, a verdict of $2,500 is not excessive in such a case. (*Post, pp. 91, 92.*)

FROM   DAVIDSON.

Appeal in error from Circuit Court of Davidson County. J. W. BONNER, J.

R. F. JACKSON for Street Railway.

M. B. HOWELL and STOKES & STOKES for Griffin.

WILKES, J. This is an action for damages for personal injuries sustained by the plaintiff as the result of being ejected from a car of the Nashville Street Railway. There was a trial before a jury and verdict and judgment for $2,500, and the street car company has appealed and assigned errors.

The plaintiff entered the transfer station of the road through a turnstile on College street, paying the usual 5 cents fare, to take a car for South High street, where he lived. He entered a High street car. There is a conflict of evidence as to the point where this was done.

Plaintiff insists that he entered the car when it was in the transfer station while the road insists that he did not enter it until after it pulled out from the station proper into an open space between it and the shops. Both contentions are quite strongly supported by testimony. The contention of the road is, that he ran through the transfer station room proper and caught up with the car in the open space, where it had stopped temporarily for the conductor, who had stepped into a side room after water. It is also insisted that when he ran out of the station house, the watchman notified him that if he boarded the car after it had left the station he would have to pay an additional fare. The conductor was notified by the watchman that the boy had run out from the transfer station and entered the car on the outside, and to collect another fare from him. The check agent, whose business it was to register the persons who entered the cars in the station house and to punch a ticket so as to show the number of persons who had so entered, had punched a ticket for three persons, and when the conductor returned and came to his car, he saw the ticket punched for only three persons while four were on the car. He rang the bell and started his car, and at once went to the plaintiff and demanded his fare. Plaintiff stated that he had already paid and would not pay again, when the conductor told him he would have to pay, or

get off, explaining to him the rule of the company that persons were not allowed to enter the cars beyond the line of the station house without paying fare, although they had already paid a fare in order to enter the station, but that he could return to the station house and take the next car without paying an additional fare. The passenger declined to pay any additional fare, or to leave the car and return to the station, and the conductor, with the assistance of the motorman, put him off the car. The plaintiff resisted, and after he was put off got on the car again, which in the meantime had moved up a short distance, and had reached the car shed, but had not left the inclosure or premises of the company, and had not reached the street. At this point he was again put off by the conductor, and several other company employees, who came to his assistance. There is some conflict as to how the ejection was accomplished. All parties agree that it was by force and over a stubborn resistance. The plaintiff insists that he was treated in a rough, rude manner, and with violence and force, and after he had been removed from the car, was pushed violently into a pit four feet deep at that point, which was used by the company as a place where the employees could go under the cars and wipe them off and arrange the electrical appliances. He insists that in consequence of being thrown into this pit, and as a result of the

rough and violent usage, he was seriously and permanently injured. The road, while conceding the ejection by force, contends that only so much was used as was necessary under the circumstances, and that the plaintiff was not thrown or pushed into the pit, but fell into it himself in his violent efforts to resist the ejection and get back upon the car. The road also insists that he was not seriously injured, but pretended to be so. Both these theories are quite strongly supported by testimony, and were submitted to the jury and urged upon its consideration by able counsel.

There are virtually but two errors assigned—one that the verdict of $2,500 is excessive, and the other that the Court wrongly instructed the jury and refused to give in charge certain propositions which were requested. The propositions criticized are, in substance, that if the plaintiff boarded the car after it left the transfer station, and if the conductor, when he boarded his car between the transfer station and car shed, rang the motorman to proceed before approaching the plaintiff for his fare, this would not constitute a waiver of the rule and regulation requiring a passenger to pay an extra fare if he got on the car after it left the station, for the conductor would have the right to assume that the plaintiff would observe the rule in this respect when his fare was applied for. In this connection he was also asked to charge that if the jury found from the evidence that

defendant road had a rule requiring passengers to board the cars in the transfer station proper, and if they failed to do so and should enter the car after it left the station, they would either have to pay another fare or leave the car and return to the station and take the next car, such a rule would be reasonable, and should be observed by the passenger. This was declined by the Court as unnecessary and not applicable to the facts in the case. It will thus be seen that upon this feature of the case the Court declined to pass upon the reasonableness or unreasonableness of the rule, because, in the opinion of the trial Judge, the defendant, by starting its car on its journey with knowledge of plaintiff's method of boarding it, and with the further knowledge that as a fact he had paid his fare, waived its right to enforce the rule against him, and accepted him as a passenger. In other words, it is said that this charge is error, because the conductor might properly start his car upon the assumption that when he approached the passenger for his fare, he would pay it and that he would conform to the rules of the company and pay another fare, as he had been warned he would have to do while on his way out of the transfer station to enter the car. The insistence is that the Court should have charged the jury that the rule was a reasonable one, and must be complied with, and if not complied with the plaintiff had no right to ride, and might be

Nashville Street Railway v. Griffin.

ejected. It is also said that the trial Judge, to some extent, invaded the province of the jury when he stated that the starting of the car was a waiver of the rule and an acceptance of the passenger. As to the latter contention it is evident that the charge could only apply upon the theory advanced by the road itself, that the passenger entered the car after it left the station, because if he entered before it left, there could be no question of his acceptance and right to ride. In this view of the case, the assumption of the Court, if error at all, was not injurious to defendant, as it was based upon the theory of the road that the entry was made outside the station. It is also said that the signaling of the car to move and the application for the fare were virtually made at the same moment and before the car had progressed more than a few feet and before it left the station, and that mere starting of the car should not, under these circumstances, be held to imply the acceptance of the passenger as a waiver of the rule.

We are of opinion the criticism of the appellant as to the charge of the Court and the refusal to charge the special requests, are well taken. We are of opinion that it was error to charge that the mere starting of the car upon its journey with the knowledge of the method of plaintiff in boarding it, and that he had paid his fare, was an acceptance of the plaintiff as a passenger and

a waiver of the rule as to him. In the first place, the starting of the car and demanding the fare was so nearly simultaneous that the car progressed only a short distance before the fare was demanded and refused and the car was stopped for plaintiff's ejection.

In the next place, the conductor may have very well assumed that plaintiff would pay the fare, as he had been notified he would have to do, and acting on this assumption started the car in order that other passengers might not be delayed. If the plaintiff had been the only person on the car, there would have been more strength in the position taken. But there were other persons on the car whose rights and convenience were also to be considered and protected, and it was not improper that the conductor should start the car and trust to arranging with plaintiff his right of passage without detaining other passengers.

We are also of opinion that the Court erred in not charging the special request to the effect that the rule of the company requiring passengers to enter the cars while in the station house was a reasonable one. It is apparent that it was a rule which greatly facilitated the transfer of passengers and dispatch of cars. It did away entirely with the necessity of passengers carrying tickets, and made their right of passage depend entirely upon whether they had entered the cars in the station house. Whether entering by another

car, or line, or through the turnstile, the passenger was subjected to no further trouble than simply getting upon a car upon the line he intended to travel. And so restricting the right to enter the cars to those only who had entered the station, and from it entered the cars, relieved the road from the trouble and annoyance of tickets and stoppage outside of the station house, and facilitated the running of the cars and transfer of passengers. We think, therefore, the Court should have charged this proposition embodied in the special request. But while this is true, the Court should have said, in addition, that although the rule may be reasonable in itself, it must also be enforced in a reasonable manner, so as to carry out the objects and purposes of the rule. *Turner* v. *Railroad,* 16 Pickle, 213.

Now, we have, upon the defendant's own theory, this state of facts. The plaintiff, a mere boy 19 years of age, had entered the station through the turnstile, paying the regular fare which entitled him to ride on any of the lines converging in that station. When he entered he saw that the High street car, which he intended to ride upon, had started out of the station house proper, but had stopped immediately beyond the station line, and only a few feet from it, and within the company's inclosure. He knew that unless he entered that car he would be required to wait twenty minutes, and seeing it standing waiting he

went beyond the station house proper a few feet and entered it. Now, conceding that the rule was a reasonable one, was it a resonable enforcement of it to expel this plaintiff from the cars when it was known to the watchman and conductor that he had paid his fare, and entered the station house for the purpose of taking this very car. It seems that there can be only one answer, and it is that the arbitrary enforcement of the rule to the extent of ejecting the passenger from the car and compelling him, after he had entered one car in which there was plenty of room, to leave it and return to the station and wait for another car was an unreasonable and arbitrary enforcement of the rule. Now, if the car had not stopped and afforded him the opportunity to enter it, he could not have required it to do so to enable him to board it. But all the purposes of the rule had been met and subserved and the employees of the company knew it. To arbitrarily enforce the rule in such case could subserve no good purpose, but would make it an instrument of oppression by the mode of its enforcement. We are of opinion, therefore, that while the errors complained of exist, they are immaterial under the facts of this case, and that the case should turn upon the manner in which it was attempted unreasonably to apply the rule under these special circumstances, which, under ordinary circumstances, was reasonable

and proper. The error of the trial Judge is not, therefore, reversible.

The only other assignment of errors it is material to mention is that the verdict and judgment is excessive in amount. The charge of the Court as to the measure of compensatory damages is not complained of. The trial Judge said upon the subject of punitive damages:

"If you find for the plaintiff and also find that the conduct of defendant's servants was wauton, reckless or malicious, you would have the right besides damages compensatory, to award vindictive or punitive damages, or what is commonly known as 'smart money.'" We do not understand that this charge is excepted to as incorrect, but the contention is that it is not a case for punitive damages, and that the amount given is far in excess of compensation for the actual injuries received. The extent of the injuries received is a matter of much controversy in the evidence. It appears that the plaintiff fell into a pit some four feet deep. It appears that his hip was injured by the fall, and the passage of blood from him indicated unmistakably internal injuries. He is shown to have been somewhat feeble and subject to fits. He was taken with pneumonia a short time afterward and came near dying, and there is testimony that the severity of the attack was to some extent due to the injuries he had received, and the condition of his system in consequence of

them. But we are of opinion that under the pleadings, facts and charges in this case the jury was warranted in giving punitive damages. We look upon the ejection of the plaintiff under the circumstances as entirely unwarranted and arbitrary. It was done, according to the proof, in a rough, rude, insulting, and violent manner. There is testimony tending to show that several employees combined and co-operated to put him off; that it was done at a place which was not safe, and some of the witnesses state, in substance, that he was pushed or thrown over into the pit. As he was at best but a weak man, and capable of only limited resistance, and had opposed to him several men, it would seem that he could have been held and handled in a way that would not have injured him or subjected him to such indignities as he suffered, notwithstanding his resistance.

It being a proper case, in our opinion, for punitive damages, we are not disposed to disturb the verdict, and the judgment of the Court below is affirmed with costs.