YAZOO & MISSISSIPPI VALLEY RAILROAD COMPANY v. FRANCES FITZGERALD.

[50 South. 631.]

1. RAILROAD. *Passengers: Irregularity in tickets. Insults. Punitive damages.*

   Where a woman, about to take passage on a railroad train, to a point in another state, was induced by the carrier to purchase a mileage book, good for transportation only within this state, and board the train on the idea that it was good to her destination, and, after her mileage had been honored by two conductors in this state and the train was near the state line, was aroused at night from sleep in her berth on a sleeping car, rudely treated

and insulted by a third conductor because of the irregularity in the evidence of her right to be carried, and, after reaching her destination, made to pay fare from the state line, she may in the discretion of the jury recover punitive damages of the railroad company.

2. SAME. *Excessive verdict. Facts.*

Facts of the case considered and two thousand five hundred dollars damages adjudged excessive.

FROM the circuit court of Issaquena county.

HON. JOHN N. BUSH, Judge.

Mrs. Fitzgerald, appellee, was plaintiff in the court below; the railroad company, appellant, was defendant there. From a judgment in plaintiff's favor the defendant appealed to the supreme court.

The appellee, Mrs. Fitzgerald, in company with her sister, being desirous of going from Rosedale, Mississippi, to New Orleans, Louisiana, was persuaded by the railroad company's ticket agent at Rosedale to purchase a "family mileage book" which had recently been adopted by the railroad company as permissible for use by passengers in lieu of the regular tickets, the agent assuring appellee that such mileage book would entitle both herself and sister to travel thereon. Appellee accordingly purchased a one-thousand mile mileage book for $25, and, after having her baggage checked, boarded appellant's south-bound passenger train for New Orleans, in company with her sister. The first two conductors on the train accepted her mileage, the second of the two tearing out sufficient mileage from the book to carry the two passengers to their destination, as they were occupants of a sleeper and it was nighttime. Later, after appellee and her sister had retired for the night in the sleeper, a third conductor, at about three o'clock in the morning, awakened appellee, telling her that her mileage book was not good for transportation beyond the Mississippi state line, and that she would have to pay fare from the Mississippi line to New Orleans. Appellee testified that the conductor was rude and insulting in demeanor toward her, that he did not ex-

plain the situation fully, but demanded money; that, when she asked for explanation, he stated in reply, "You will have to pay me money, or get off the train;" and, that when she stated that she would pay him no further fare he told her: "You needn't try to bluff me, like you have done the other conductor. I am an old man on the line, and know my business. Your mileage is all wrong. You will have to pay me money, or get off of the train." Appellee refused to make any payment as demanded by the conducter, but her sister offered to pay the conductor in the morning before they should leave the train, to which the conductor finally agreed. On arriving in New Orleans in the morning, the two ladies went with the conductor to the company's superintendent where the rules of the company with regard to the use of such mileage transportation were explained to them, but the superintendent, who had received appellee's mileage book from the conductor, declined to return it and required her to take in exchange another form of mileage book for which she was compelled to pay an additional sum of five dollars. Appellee testified further that, before she and her sister left the train, the conductor approached them and told her that if she had been a man instead of a lady he would have "handled her" in a different manner from what he had done. The conductor, testifying in behalf of the appellant company, denied that he was in any way insulting or threatening in his behavior, and affirmed that he simply, in conformity with his duty as conductor, awakened Mrs. Fitzgerald quietly, and told her that the mileage book was not good for transportation beyond the Mississippi state line, and that she would have to pay the fare, two dollars and fifty cents, from the state line to New Orleans. The case was submitted to the jury under instructions permitting the finding of punitive as well as actual damages. The verdict returned in appellee's favor was for $2,500.

*Mayes & Longstreet,* for appellant.

Construing this case most favorably for appellee, and accepting her version of the occurrence on the Pullman sleeper, and

accepting her statement of the words used by the conductor, there was no cause of action for recovery of punitive damages against appellant.

It may be that appellant's agent at Rosedale made a mistake in informing Mrs. Fitzgerald that the mileage book was better for use than an ordinary ticket, yet the mistake of this ticket agent is not the ground of complaint charged in the declaration. It is the action of the conductor who, in the early morning, awakened Mrs. Fitzgerald, telling her that such mileage book was not valid beyond the Mississippi state line, and that she would have to pay fare from that point to New Orleans. Now, the conductor was correct in that he was not authorized to accept any of the mileage book for transportation beyond the Mississippi state line; and there was no error on his part in calling the passenger's attention to such fact.

Accordingly, the matter is reduced down to a consideration of whether the language of the conductor was insulting and his manner rude. The words used by him were not more than brusque and awkward in expression. The expression, "You cannot bluff me like you did the other conductor," was a mere roughness of speech, and of itself indicated no malice or wilful disregard of the rights of appellee. *Illinois, etc., R. Co. v. Brookhaven Machine Co.,* 71 Miss. 663; *Kansas City, etc., R. Co. v. Fite,* 67 Miss. 373; *Mississippi, etc., R. Co. v. Gill,* 66 Miss. 39.

The distinction between an act against legal right without malice, and an act against legal right with malice or insult, should be careful observed by the courts. *Alabama, etc., R. Co. v. Burnell,* 69 Miss. 652; *Alabama, etc., R. Co. v. Drummond,* 73 Miss. 713.

But even if appellee were entitled to recover, her recovery was excessive. See *Louisville; etc., R. Co. v. Higgins,* 64 Miss. 80; *Memphis, etc., R. Co. v. Green,* 52 Miss. 364.

*H. P. Farrish* and *Flowers, Fletcher & Whitfield,* for appellee.

The appellee was lawfully on the train as a passenger, traveling on a family mileage book which had been sold by the appellant, through its ticket agent at Rosedale, for the expressed purpose that appellee might make this particular trip over appellant's line. She was rudely awakened at an unusual hour, about three o'clock in the morning, in an unusual manner, and was roughly accosted with a demand for money. If it be conceded that the conductor had a right to insist that the transportation was invalid, surely he should have approached Mrs. Fitzgerald at a seasonable time and with a courteous explanation. He certainly knew that the other conductors had accepted the mileage. It was in the highest degree insulting for him to approach her with the coarse threat to put her off the train unless the money was forthcoming. She was no trespasser. As a passenger she was entitled to courteous treatment. *Chicago, etc., R. Co. v. Curr,* 59 Miss. 496; *Forsee v. Alabama, etc., R. Co.,* 63 Miss. 66; *Illinois, etc., R. Co. v. Harper,* 83 Miss. 560.

The case of *Illinois, etc., R. Co. v. Reid,* 93 Miss. 455, 46 South. 146, 17 L. R. A. (N. S.) 344, is very much like the case at bar. Reid had a ticket to Magnolia, which had been validated by the ticket agent at St. Louis, Missouri, and the railroad gateman had passed him through the gate in the St. Louis station, and the first conductor on the train had made no objection to the ticket. A later conductor on the same train refused to stop the train at Magnolia, but compelled Reid to disembark at McComb. This court upheld an award of punitive damages. Reid had attempted to explain to the conductor the facts about his ticket, but the conductor, in a rude manner, had pitched the ticket back into the lap of Reid, saying "Oh, I have heard that before." Under the authority of the cited case, it is evident that appellee, Mrs. Fitzgerald, is entitled to the recovery of punitive damages.

SMITH, J., delivered the opinion of the court.

On the evidence for the plaintiff, which was accepted by the jury, she was entitled to recover punitive damages. *Illinois,*

*etc., R. Co. v. Reid,* 93 Miss. 455, 46 South. 146, 17 L. R. A. (N. S.) 344.

We think, however, that the verdict was excessive, but, if appellee will remit down to $1,500, the judgment will be affirmed; otherwise, it will be reversed, and the cause remanded.

*Affirmed on remittitur.*

MAYES, J., delivered the following dissenting opinion.

When the facts of this case are thoroughly examined it is my judgment that it does not present a case for the allowance of punitive damages. I think the judgment should be reversed and the cause remanded.