[Civil No. 2108.   Filed February 7, 1924.]

[223 Pac. 116.]

## SOUTHERN PACIFIC COMPANY, a Corporation, Appellant, v. FOSTER BOYCE, Appellee.

1. CARRIERS — EVIDENCE AS TO PASSENGER'S EJECTION FROM TRAIN HELD TO JUSTIFY SUBMISSION OF PUNITIVE DAMAGES TO JURY.— In a passenger's action for personal injuries from being ejected from a train, evidence *held* to justify submission of the question of punitive damages for his ejection as being not merely unlawful but wanton and in disregard of his rights.

2. CARRIERS — PUNITIVE DAMAGES ALLOWABLE WHERE EJECTION OF PASSENGER WANTON.—Where the act of a carrier or its servants in ejecting a passenger is characterized by malice, wantonness, or violence, punitive damages may be recovered.

3. CARRIERS—HONEST MISTAKE AS TO TICKET HELD NOT TO RELIEVE CONDUCTOR'S ACTIONS IN EJECTING PASSENGER FROM CHARGE OF BEING WANTON, MALICIOUS AND RECKLESS SO AS TO RENDER CARRIER LIABLE FOR PUNITIVE DAMAGES.—*Admitting that a conductor was honestly mistaken in his belief that a passenger's ticket entitled him to passage only to a certain station, such belief would not relieve his actions, in ejecting the passenger, from charge of being wanton, malicious and reckless so as to render carrier liable for punitive damages, in view of evidence that the conductor wrongfully charged him with failure to purchase a ticket to his destination and then grabbed hold of him and shoved him toward the door, just previous to and at the time he was compelled to step or jump from the moving train.*

2. See 5 R. C. L. 150.

3. Refusal of conductor to listen to passenger's explanation as to his contract, as justification for punitive damages for passenger's expulsion, see note in 17 L. R. A. (N. S.) 344. See, also, 5 R. C. L. 151.

4. CARRIERS—EJECTION OF PASSENGER FROM MOVING TRAIN WITH UN-NECESSARY FORCE JUSTIFIES PUNITIVE DAMAGES.—Ejecting a passenger from a moving railway car with such force and in such a way as to cause him to fall to the ground and injure himself discloses conduct so malicious and reckless as to justify punitive damages, even though the person ejected was merely a trespasser, because no more force than necessary to accomplish removal may be used.

5. CARRIERS — IMMATERIAL THAT CARRIER DID NOT AUTHORIZE OR RATIFY WANTON ACT OF CONDUCTOR AS AFFECTS PUNITIVE DAM-AGES.—In action for personal injuries, alleged result of plaintiff being ejected from defendant's passenger train, where plaintiff showed that his ejection was not merely unlawful but wanton and malicious and in disregard of his rights as a passenger, as affecting the question of punitive damages, it was immaterial that defendant did not authorize or ratify the acts of its conductor.

6. MASTER AND SERVANT—PUNITIVE DAMAGES RECOVERABLE FOR SER-VANT'S MALICIOUS AND WANTON ACTS.—If a servant is engaged in the furtherance of his employer's business and acting within the scope of his employment, punitive damages for injury due to his malicious and wanton acts may be allowed against employer.

7. CARRIERS—INSTRUCTION AUTHORIZING JURY TO DETERMINE AMOUNT OF DAMAGES TO HEALTH FROM OWN EXPERIENCE AND EXERCISE OF COMMON SENSE HELD WITHOUT ERROR.—In a passenger's action for personal injury from being ejected from defendant's passenger train, it was not error to instruct that in estimating damages for permanent injuries to health or body of plaintiff it was not necessary that the amount be proved definitely in dollars and cents, but that jury could determine it from their general knowledge and experience by exercise of good sense and judgment, but they were not to estimate it without regard to evidence.

APPEAL from a judgment of the Superior Court of the County of Yuma. Fred L. Ingraham, Judge. Affirmed.

Mr. Francis M. Hartman, for Appellant.

---

4. Liability of railroad company for negligence in ejecting trespasser from moving train, see note in 13 **L. R. A. (N. S.)** 364. See, also, 5 **R. C. L.** 112, 137.

5. See 5 **R. C. L.** 152.

6. See 18 **R. C. L.** 778.

See 10 **C. J.** 772, 773, 774, 793; 17 **C. J.** 844, 990.

Mr. Thos. D. Molloy, for Appellee.

McALISTER, C. J.—This appeal is prosecuted by the Southern Pacific Company, a corporation, for the purpose of obtaining from this court a review of a judgment of the superior court of Yuma county awarding damages in the sum of $865 to the plaintiff, Foster Boyce, for personal injuries alleged to have been received by him on the twenty-second day of January, 1922, as a result of his being ejected from one of defendant's passenger trains upon which he was riding as a passenger.

It appears from the amended complaint that on January 22, 1922, the plaintiff purchased at Yuma, Arizona, a ticket entitling him to transportation over defendant's railroad from Yuma, Arizona, to Colton, California, and that within a few minutes thereafter he boarded its passenger train No. 109 for the purpose of going to that city; that when said train reached a point about one-half mile northwesterly of Ogilby, California, and about 174 miles southeasterly of Colton, California, the defendant, through its officers, agents and employees in charge of said train—

"wrongfully, unlawfully, wantonly and maliciously, and with force and violence, ejected plaintiff from said train, while the same was in motion, and cast and threw the plaintiff onto the ground with great force and violence, and refused to permit him to ride further thereon; that by reason of said ejectment, and the force and violence so wrongfully, unlawfully, wantonly and maliciously used by the defendant, and his being cast onto the ground from said train with force and violence, as aforesaid, the plaintiff was severely bruised and injured about the body, and suffered serious and permanent injuries, internally, in the region of the spleen, kidneys and liver; and suffered great bodily pain and anguish of mind, shame and humiliation; and has at all times since suffered great bodily pain and suffering; and was delayed in his business and prevented from engaging in any gainful

occupation for a period of three months from and after said ejectment, to his damage in the sum of $300; and was compelled to pay out and become liable for doctor's fees and medicine, and traveling expenses to consult doctors, in the sum of $300; all to plaintiff's great damage in the sum of $3,000."

Following a general denial, the answer alleges that the ticket purchased by plaintiff entitled him to ride over defendant's road from Yuma, Arizona, to Ogilby, California, a small station seventeen miles west of Yuma, and that its conductor so stated to plaintiff just after leaving Yuma when it was taken up; that the train stopped at Ogilby, but plaintiff did not get off there, and that after it had started from the station the conductor called plaintiff, who was standing on the rear end of the car, and notified him that Ogilby was his station and that he must get off, but that he refused and stated he was going through; that thereupon, as the train was moving out of the station at a speed of four or five miles per hour, the conductor reached up to pull the bell-cord to stop the train, when plaintiff voluntarily jumped to the ground, alighting upon his feet without being injured in any way, and walked back to the depot at Ogilby and represented to the defendant's agent there that he had been wrongfully and by force and violence ejected from the train after his ticket entitling him to ride from Yuma, Arizona, to Colton, California, had been taken up by the conductor, and as a result of such ejection that he had received severe personal injuries; that thereupon said agent sent a telegram to defendant's superintendent or chief train dispatcher at Los Angeles, California, telling him what plaintiff had said and that said officer wired the conductor on train No. 101, which was closely following 109, to

"Bring colored man named Foster Boyce Ogilby to Colton without transportation. This man off No. 109 at Ogilby thru mistake."

That these telegrams were both prompted by and sent as a result of the false and fraudulent representations made by plaintiff to defendant's agent at Ogilby, and that for the same reason defendant transported plaintiff from Ogilby to Colton without requiring him to pay therefor, and that the amount thereof, $7.22, is still due and owing. The prayer is that plaintiff take nothing and that defendant have judgment for $7.22, the fare, and costs.

At the conclusion of the evidence the court instructed the jury as to the law of the case, and the giving of certain of these instructions as well as the refusal to give others forms the basis of the fifteen errors assigned, but none of these, except those dealing with exemplary damages and the method of determining the amount of damages for injuries to health and body, have been argued by appellant. We will therefore treat the others as waived and consider only those appellant has discussed. The jury was told that—

If it believed from the "evidence that the ejection of the plaintiff from the train was wanton and malicious, and was perpetrated in a rude manner and with unnecessary force, evincing an intent to wound and injure plaintiff's feelings and bring him into contempt and disgrace him in the estimation of the public, then the case is one justifying the imposition of what is known in the law as exemplary or vindictive damages, in addition to the actual damages of which I have heretofore instructed you. And in arriving at the amount of exemplary damages to be imposed, if any, you should take into consideration all the facts and circumstances and the position, character, and feelings of the plaintiff."

Appellant does not contend that exemplary damages cannot be awarded in this state, or that this instruction is not a correct statement of the law as to when they may be allowed, but urges that there is no evidence in this case justifying or warranting such

an instruction, because it appears that if the conductor made a mistake in ejecting plaintiff from the train, it was in an honest belief that he did not have a ticket to Colton, and there is no evidence showing malice or bad motive, or the use of any violent or harsh language toward plaintiff. This necessitates a brief statement of the evidence bearing upon this phase of the case.

Plaintiff's testimony, so far as material, was this: He purchased in Yuma, Arizona, a ticket entitling him to ride over defendant's railroad from there to Colton, California, paying $9 therefor—a five-dollar bill and four silver dollars—and it was taken up by the conductor as they were going out of Yuma. As the train was leaving Ogilby, California, the first stop west of Yuma, plaintiff left his seat and went to the rear of the car to get a drink, and while there the conductor, Fitzgerald, came up, and the following conversation between them occurred:

Conductor: "Where you going? Give me your ticket."

Plaintiff: "I am going to Colton."

Conductor: "Give me your ticket."

Plaintiff: "I gave you my ticket this side of Yuma."

Conductor: "No, you didn't."

Plaintiff: "I did."

Conductor: "You didn't."

Plaintiff: "I did."

Conductor: "Pay your fare or get off this train. What you trying to do? Hold up this train?"

Plaintiff: "No, I paid my fare. I bought my ticket, and I can prove I bought my ticket. My suitcase is on the train. My place is on the train."

Conductor: "It isn't so. Get off this train. You got on this train right there."

Thereupon the conductor grabbed hold of plaintiff, shoved him toward the door, and then out and on to the ground, causing him to fall sideways while the train was moving, though he could not tell how fast, because

he was addled, dizzy-headed, sick at the stomach, and the train out of sight when he came to himself. He then walked back to Ogilby, though so ill he could hardly get there, and told the agent what had happened and spoke of his suitcase, and asked him to "tell Commodore to take care of it; because I will be over there to-morrow." He remained at Ogilby until picked up by the next train which took him to Colton. There he was met by a railroad policeman and a doctor, who took him to the latter's office and gave him a slight examination. He returned to Yuma the next day and has not been able to work since, though prior thereto he made $65 per month all the time. The place where he was thrown off was out on the desert, but he could not say how far from Yuma.

Commodore Le Grande, a colored boy, eighteen years of age, testified that he and Boyce went to the depot together and both bought tickets, he purchasing two for Los Angeles—one full-fare ticket for himself and a half-fare ticket for his eleven year old brother, and Boyce one to Colton for which he paid $9. The conductor took them up and gave him a hat check, but did not give one to Boyce, who rode in the seat with him and had his suitcase in the rack above them. At Ogilby Boyce left the seat to get a drink of water, and soon after he heard the conductor ask him for his ticket, and Boyce said: "I paid. I have got my ticket." And the conductor replied: "No. What are you doing? Trying to hold this train up?" About this time Boyce went off the train, but he did not know how. Soon afterward the conductor asked him if Boyce had a ticket, and he replied, "Yes." The suitcase was taken off at Colton.

A. J. Tullus testified that he was a cook, and that Boyce had worked for him as a dishwasher and was industrious; the wages for dishwashers in that vicinity then were from $15 to $17 per week; that he saw Boyce the day he left for California and he was in good health, and a day or two later, just after he had

returned to Arizona, and he was crippled. "He was lame and told me he was suffering from his side and was hurt awful bad. I know the boy was suffering, and I went out home, and my wife attended to him, and I went out nights to see how he was getting along, and he was sick."

E. G. Fitzgerald, the conductor, testified that—

Boyce gave him a ticket from Yuma to Ogilby, and that when he took it up he put it before the young man's face and said, "Yuma to Ogilby"; that he unloaded his Ogilby passengers and gave the signal to start, and then "looked to see where my nigger was, and my nigger wasn't in sight, and I rushed upon the platform of the car to see where he was; and he was coming down the aisle to the water-tank, and I says to him: 'This is your station. This is where you get off.' And he says: 'This is not my station. I am going through.' And I says, 'Where you going to?' and he says, 'I am going to Colton,' and I says, 'Then you pay fare to Colton.' He says, 'I done paid my fare,' and I says, 'You never paid only the fare to Ogilby.'"

Plaintiff was then standing at the water-tank, four or five feet from the door, and he (witness) shoved him gently out on the platform, and as he (witness) reached for the bell-cord to stop the train Boyce stepped down on the lower step and of his own accord jumped off the train, which was going four or five miles an hour, with the agility of youth, though he said afterwards that plaintiff stepped off. He did not fall, but landed on his feet, and ran back toward the station with his hands in the air, like a wild man. He pushed plaintiff out to the platform, but did not touch him afterwards. Boyce said nothing about suitcase or proving by two other boys that he bought ticket to Colton. He did not want proof, for practically all the evidence was in his hand. He did not know about suitcase and was not interested in it. Toward the close of the cross-examination and in reply to a question as to why, after he had been noti-

fied by wire that Boyce claimed that he had purchased ticket from Yuma to Colton and had been put off at Ogilby, he did not interview two passengers on the train going from Yuma to Colton, he testified:

"I did not think there was anything serious connected with this affair. They wired me. There wasn't anything in my mind to justify anything of these legal proceedings, entailing expense to the county of Yuma of five or six thousand dollars, for a good for nothing whelp like that."

Witness was sixty-two years of age, had been in the employ of the company forty-four years, and would receive a pension at the age of seventy.

William Marshall, porter of the car in which Boyce was riding, Fred Watson, brakeman on the train, and Louis Alvarez, a passenger, testified that the conductor did not shove Boyce off the train, but that he stepped down off the car to the ground without falling, and, according to the two former, while the train was moving slowly out of the station. Alvarez stated that he walked back towards the depot.

According to E. P. Phenis, rear brakeman, as the train was pulling out of Ogilby he was on the rear end and saw Boyce walking back toward the depot.

R. P. Marable, a passenger from Yuma to Ogilby, testified that two minutes after the train left Ogilby, he saw Boyce walking about the depot there and complaining about having left his suitcase on the train, and that there was nothing whatever the matter with him.

C. F. Witmer, a physician at Colton, testified that he thoroughly examined Boyce upon his arrival at Colton and that there was nothing the matter with him, no bruises or marks of any kind on him.

Under this testimony we think the court properly submitted the question of exemplary or punitive damages, because appellee's version of the transaction if correct, and this was wholly for the jury to decide, shows that his ejection from the train was not merely

unlawful but wanton, malicious, and in entire disregard of appellee's rights, and where ejection is accompanied by wantonness, malice or gross negligence, such damages are allowable. "Where the act of a carrier or its servants," says 5 R. C. L. 150, "in ejecting a passenger, is characterized by malice, wantonness, wilful oppression or violence, or gross negligence, exemplary or punitive damages may be recovered." This doctrine, which was based upon the maxim, "*Qui facit per alium facit per se*," is established and generally recognized in both the state and federal courts. Numerous authorities could be cited in its support, but the following are sufficient: *Atlantic & Great Western Railway Co.* v. *Dunn,* 19 Ohio, 162, 2 Am. Rep. 382; *Gorman* v. *Southern Pacific Co.,* 97 Cal. 1, 33 Am. St. Rep. 157, 31 Pac. 1112; *Head* v. *Georgia Pacific Ry. Co.,* 79 Ga. 358, 11 Am. St. Rep. 434, 7 S. E. 217; *Palmer* v. *Charlotte etc. R. R. Co.,* 3 S. C. 580, 16 Am. Rep. 750; *Forsee* v. *Alabama Gr. So. R. R. Co.,* 63 Miss. 66, 56 Am. Rep. 801; *Lake Shore etc. R. Co.* v. *Rosenzweig,* 113 Pa. 519, 6 Atl. 545; *Nashville Street Ry.* v. *Griffin,* 104 Tenn. 81, 49 L. R. A. 451, 57 S. W. 153; *Kansas City, Ft. Scott & Memphis R. R. Co.* v. *Little,* 66 Kan. 378, 97 Am. St. Rep. 376, 61 L. R. A. 122, 71 Pac. 820.

Appellant contends however, that the evidence does not disclose such wanton, malicious, or grossly negligent conduct on the part of the conductor as to render appellant liable to damages of this character because it appears therefrom that if he did make a mistake in ejecting appellee it was in an honest belief that his ticket entitled him to passage only from Yuma to Ogilby; that no violence or harsh language toward him was used by the conductor; and that he was little inconvenienced, if at all, by reason of his ejection, since he was taken to Colton by the next train, a fast one, without the payment of fare and with but little, if any, delay. Admitting that he was

honestly mistaken regarding the ticket, however, would not relieve his actions from the charge of being wanton, malicious and reckless in view of what he said and did just previous to and at the time appellee was compelled to step or jump from the train. Ejecting one from a moving railway car with such force and in such a way as to cause him to fall to the ground and injure himself unquestionably discloses conduct so malicious and reckless as to justify punitive damages, and such would be the case even though the person ejected in this manner were merely a trespasser because no more force than necessary to accomplish his removal may be used. As said by 5 R. C. L. 134:

"Even though a person has no right on the vehicle or the premises of a carrier, and the latter clearly has a right to eject him therefrom, such right must be exercised in a reasonable and prudent manner, and with due care for the safety of the offender; and for a failure so to act resulting in injury to the person ejected the carrier will be liable. In exercising the right of ejection unnecessary force must not be used, nor must it be exercised at such time, place, and under such circumstances that serious injury will probably and naturally result; for, if it ensues, this is the equivalent of intentional, reckless, or wanton injury."

If other evidence than the acts of the conductor were needed to justify the instruction submitting exemplary damages, it could be found in what he said to appellee at the time. Language directed toward a passenger in the presence and hearing of others and less insulting than that employed by the conductor in this case, which in effect accused appellee of lying and attempting to beat his way on the train, has been held sufficient evidence of wilfulness and wantonness to justify punitive damages (*Yazoo & M. V. R. Co.* v. *Fitzgerald*, 96 Miss. 197, 50 South. 631), and where the evidence showed that the conductor in the presence and hearing of other passengers cursed and threatened the plaintiff for boarding the train for a place at

which it did not stop it was held that exemplary damages were properly submitted to the jury. *Cincinnati, N. O. & T. P. Ry. Co.* v. *Strosnider* (Ky.), 121 S. W. 971.

The contention upon which appellant chiefly relies, however, is that even though exemplary damages are allowable and the record contained evidence that would sustain them, yet appellee cannot recover in this case because it is not shown that appellant authorized or ratified the wanton or malicious acts of the conductor, and it cites among others the following authorities which hold that damages not intended to compensate the sufferer, but allowed wholly for the purpose of punishing the offender and serving as a warning to others, may not be awarded against a person unless he participated in, previously authorized or subsequently ratified the wanton and malicious acts upon which they are based: *Warner* v. *Southern Pacific Co.,* 113 Cal. 105, 54 Am. St. Rep. 327, 45 Pac. 187; *Hagan* v. *Providence & Worcester R. Co.,* 3 R. I. 88, 62 Am. Dec. 377; *Voves* v. *Great Northern R. Co.,* 26 N. D. 110, 48 L. R. A. (N. S.) 30, 143 N. W. 760; *Lake Shore & Mich. So. Ry. Co.* v. *Prentice,* 147 U. S. 101, 37 L. Ed. 97, 13 Sup. Ct. Rep. 261 (see, also, Rose's U. S. Notes).    The holding in these and all other cases of the same import is based upon the principle that exemplary damages are in the nature of punishment, and should not be imposed upon one who has not participated in the offense.    In such jurisdictions, however, slight evidence of ratification is sufficient to render the principal liable.    5 R. C. L. 152.    Retaining in its employ the person guilty of the wanton and reckless conduct after the employer had gained full knowledge of his acts, as is true in this case, was held in *Patry* v. *Chicago, St. P., M. & O. Ry. Co.,* 77 Wis. 218, 46 N. W. 56, sufficient to show ratification though there are cases to the contrary.

But "the doctrine," as stated in 10 C. J. 772, "that a master is not liable for the willful and malicious

acts of the employee, even though within the scope or course of his employment, is generally discarded, and with it the doctrine that a corporation cannot be rendered liable for exemplary damages by reason of its employee's acts, and the generally recognized rule is that the carrier may be mulcted in exemplary damages for the wrongful acts of its employee in ejecting a passenger from a train, where such act is within the scope or course of the employee's employment, in all cases where natural persons acting for themselves would be liable for such damages. And in a great number of cases in which recovery has been sought against carriers for wrongful ejection, exemplary damages have been allowed where it has been shown that the act was accompanied with malice, wantonness, or gross negligence; and although the ejection is lawful, if unnecessary violence is wilfully employed by the carrier's employees, the carrier will be liable for exemplary as well as actual damages.''

The rule that if a servant or agent is engaged in the furtherance of his employer's business and acting within the scope of his employment exemplary or punitive damages for an injury due to his malicious and wanton acts may be allowed against the employer is founded on public policy and established by the weight of authority. In discussing the reason for the rule the Supreme Court of Kentucky in *Louisville & Nashville R. R. Co.* v. *Ballard,* 85 Ky. 307, 7 Am. St. Rep. 600, 3 S. W. 530, said:

''A corporation can act only through natural persons. It, of necessity, commits its business absolutely to their charge. They are, however, selected by it. In the case of a railroad, the safety and comfort of passengers is necessarily committed to them. They act for it. Its entire power, *pro hac vice,* is vested in them, and as to passengers *in transitu* they should be considered as the corporation itself. It is, therefore, as responsible for their acts in the conduct of the train and the treatment of the passengers as the officers of the train would be for themselves, if they

were the owners of it.   Public interests require this
rule.''

The authorities upholding this view, which we
think is the correct one, are numerous; but we
content ourselves with citing the following: *Williams* v. *Southern Ry. Co.,* 107 Miss. 99, 64 South.
969; *Birmingham Ry. etc. Co.* v. *Lee,* 153 Ala.
386, 45 South. 164; *Whittington* v. *Philadelphia,
B. & W. R. Co.,* 5 Boyce (Del.), 248, 92 Atl. 812,
93 Atl. 563; *Seaboard Air-Line Railway* v. *O'Quin,*
124 Ga. 357, 2 L. R. A. (N. S.) 472, 52 S. E. 427;
*Citizens' St. R. Co.* v. *Willoeby,* 134 Ind. 563, 33 N. E.
627; *Union Pac. Ry. Co.* v. *Mitchell,* 56 Kan. 324, 43
Pac. 244; *Maryland & P. R. Co.* v. *Tucker,* 115 Md.
43, 80 Atl. 688; *Forrester* v. *Southern Pacific Co.,* 36
Nev. 247, 48 L. R. A. (N. S.) 1, 134 Pac. 753, 136 Pac.
705; *Dorsett* v. *Atlantic Coast Line R. Co.,* 156 N. C.
439, 72 S. E. 491; *Lake Shore etc. R. Co.* v. *Rosenzweig, supra; Dagnall* v. *Southern Ry.,* 69 S. C. 110, 48
S. E. 97; *Nashville Street Ry. Co.* v. *Griffin, supra;
Ann Arbor Ry. Co.* v. *Amos,* 85 Ohio St. 300, 43
L. R. A. (N. S.) 587, 97 N. E. 978; *St. Louis, I. M. &
S. Ry. Co.* v. *Woodruff,* 89 Ark. 9, 115 S. W. 953.

Under these authorities it was immaterial that the
corporation did not authorize or ratify the wanton
or malicious acts of the employee or agent.   It be-
came liable for exemplary damages notwithstanding.
The question of authorization or ratification, it is
true, was not discussed in most of them, but the
grounds upon which they were based are such that it
could have made no difference in the result if it had
been.   They hold the wanton, malicious and grossly
negligent acts of the servants of a corporation en-
gaged in carrying passengers, if committed within the
scope of their employment and in furtherance of their
employer's business, to be as much the acts of the
corporation as merely negligent acts, for the reason
that as to passengers whose safety and comfort while
traveling have been committed to their care they are

the corporation itself. In a majority of the jurisdictions in which this question has been directly raised the holding has been that exemplary damages may be allowed against the corporation for injuries due to the wanton or malicious conduct of the servant, regardless of authorization or ratification, if his acts were such as to subject him to damages of this character. 1 Joyce on Damages, par. 139; *Forrester* v. *Southern Pacific Co., supra; Pullman etc. Co.* v. *Lawrence,* 74 Miss. 782, 22 South. 53; *Little Rock etc. Co.* v. *Dobbins,* 78 Ark. 553, 95 S. W. 788; *Louisville etc. Railroad Co.* v. *Whitman,* 79 Ala. 328; *Jeffersonville R. R. Co.* v. *Rogers,* 28 Ind. 1, 92 Am. Dec. 276; *Atlantic & Great Western Ry. Co.* v. *Dunn, supra; Smith* v. *Southern Ry. Co.,* 88 S. C. 421, 34 L. R. A. (N. S.) 708, 70 S. E. 1057; *Goddard* v. *Grand Trunk Ry. Co.,* 57 Me. 202, 2 Am. Rep. 39; *So. Kansas Ry. Co.* v. *Rice,* 38 Kan. 398, 5 Am. St. Rep. 766, 16 Pac. 817; *Hopkins* v. *Atlantic & St. Lawrence Railroad,* 36 N. H. 9, 72 Am. Dec. 287. In his work on Damages (vol. 3, par. 950), Sutherland says:

"Where the servants of a corporation engaged in the carriage of passengers are guilty of such acts or conduct in the performance of their duties in the transportation of the injured party as a passenger as would subject them to damages of this nature, the great weight of authority holds the corporation liable to punitive damages without proof that it directed or ratified such acts or conduct. As the corporation can only act through natural persons, its officers and servants, and as it of necessity commits its trains or vehicles absolutely to the charge of persons of its own appointment, passengers of necessity commit to them their safety and comfort *in transitu,* the whole power and authority of the corporation, *pro hac vice,* is vested in such employees, and as to such passengers they are the corporation."

The court gave the following instruction upon which appellant also bases error:

"It is not necessary that the amount of damages, if any, resulting because of humiliation, or because of pain and anguish of body and mind, if any, or for permanent injuries, if any, to the health or body of Foster Boyce be proved by witnesses definitely in dollars and cents; but it is to be determined by you, gentlemen of the jury, from your own general knowledge and experience by the exercise of your good sense and good judgment; and this does not mean that you are to estimate such damages, if any there be, without regard to the evidence in the case; but your judgment and discretion in estimating the amount of such damages, if any, must be based upon the facts, conditions, and circumstances proven in this case."

The claim is that because this instruction told the jury that damages for permanent injuries to the health or body of appellee were not capable of definite proof by witnesses, but were to be determined by the jury from their own knowledge and experience by the exercise of their good sense and good judgment, it is erroneous, and *Iaegar* v. *Metcalf,* 11 Ariz. 283, 94 Pac. 1094, is cited as authority for this view. We are unable, however, to see any error in the instruction, or any violation of the rule announced in the Iaegar-Metcalf case. In fact, the instruction seems to have been drawn in accordance with the views expressed in that decision, for the court in that case used language regarding damages for bodily and mental pain which is just as applicable to damages for injuries to the health or body, for the latter, like the former, are not susceptible of definite proof and must be left to the good sense and judgment of the jury. The court said:

"In its application to bodily and mental pain the instruction was unquestionably sound. As said by the Supreme Court of the United States in the case of the *City of Panama,* 101 U. S. 464, 25 L. Ed. 1061 (see, also, Rose's U. S. Notes): 'When the suit is brought by the party for personal injuries, there cannot be any fixed measure of compensation for the pain and anguish of body and mind, nor for the permanent in-

26 Ariz.—12

jury to health and constitution; but the result must be left to turn mainly upon the good sense and good judgment of the tribunal assigned by law to ascertain what is a just compensation for the injuries inflicted.' The general rule as to the award of damages for personal injuries by the jury may be stated in this way; Where, from the nature of the damages, these are not susceptible of definite proof, they must be left to the sound judgment and discretion of the jury; but where the damages from their nature are susceptible of definite proof, the jury is restricted to such proof in ascertaining the amount thereof.''

No error appearing, the judgment of the lower court is affirmed.

ROSS and LYMAN, JJ., concur.