452 P.2d 117

**WESTERN COACH CORPORATION, an Arizona corporation, Appellant,**

v.

**Wayne VAUGHN and Orthella Vaughn, husband and wife, Appellees.**

**No. I CA–CIV 691.**

Court of Appeals of Arizona.

March 27, 1969.

Henry Jacobowitz, Phoenix, for appellant.

Ronald McKelvey, Yuma, for appellees.

MOLLOY, Judge.

This is an appeal from a judgment allowing $1,250 compensatory damages and $750 punitive damages to the owner of a house trailer against the company which the owners contend agreed to haul the trailer from Parker to Phoenix, Arizona.

The questions raised on appeal are whether the plaintiffs proved a contract of hauling with the defendant, Western Coach Corporation, whether the compensatory damages are excessive, and whether there is any basis for the punitive damages.

The facts giving rise to this action, construing the evidence favorably to support the judgment, are, in very sketchy form, as follows. The plaintiffs, husband and wife, and their five children, had been living in a newly purchased trailer for a year and a half in Parker, Arizona. When it became necessary to move their trailer-home to Phoenix, they talked with the manager of Western Coach's trailer sales lot in Parker, both over the telephone and in

person, and he agreed to move their trailer to Phoenix at a price of 50 cents per mile. There was never any direct mention in these conversations of the name of Western Coach Corporation, but the manager used words of the general import that "we" would move the trailer, he was operating out of a business establishment clearly marked as a Western Coach business, he was without question Western Coach's manager in Parker, and the plaintiffs believed they were dealing with Western Coach when they made this contract of hauling.

The person sent by this manager to pick up the plaintiffs' trailer was an employee of Western Coach. This employee picked up the plaintiffs' trailer, and their belongings within it, on a Thursday afternoon and was to have it at another trailer park in Phoenix that evening. There followed a series of events which resulted in considerable damage to the trailer and the plaintiffs not knowing exactly where their trailer was for a day of two. The trailer ended up parked alongside of the road approximately 60 miles east of Parker, with two wheels missing, with the main frame of the trailer substantially bent, with many of the cupboards in the trailer torn loose, the flooring bent, the paneling pulled apart in places throughout the trailer, and the underside of the carriage damaged by being dragged on the ground for a considerable distance.

There is evidence in the record from which the trial court could have concluded that this damage was caused by the driver's negligence in not checking the lug bolts of the wheels of the trailer to assure that they were tight, in driving in excess of the usual speed for this type of haul, in loading the trailer with the cement blocks which had formed the piers under the trailer while it was stationary (rather than placing these blocks in the truck, as is customary), in failing to note that a wheel had come off the trailer and continuing to pull the trailer down the road without a wheel, and in leaving the trailer beside the road unattended.

When the trailer did not arrive as scheduled, the plaintiffs contacted the Western Coach manager in Phoenix and were told the trailer would not arrive until Monday morning. Needing clothes to wear, they drove back on the road to Parker and on Saturday evening found their trailer parked alongside the road, unattended, with the front door latch broken and their cupboard drawers "gone through" by persons unknown. On the door of the trailer, they found a note signed by Max Morgan, later identified as the president of Western Coach Corporation, instructing a named driver, whose name they could not recall, to pick up the trailer and haul it to Phoenix.

The plaintiffs returned to Phoenix and "tried and tried" on Sunday to talk to the manager of Western Coach in Phoenix, but this manager had always just left for one of the other trailer sales lots maintained by Western Coach in that city. Mrs. Vaughn was able to contact this manager on Monday morning and at this time this manager told her, when she asked him what he was going to do about her trailer:

"* * * 'Nothing, absolutely nothing. As far as I am concerned, it can set there from now on. * * * 'Mr. Vaughn was rude to me and we tried to do a favor to you people and he was rude.' * * * 'We are out $250 on parts we can't do anything about.' "

Thereafter, the Vaughns employed another firm to haul their trailer to Phoenix, and this suit followed. At the time of trial, it developed that the Western Coach employee who hauled plaintiffs' trailer had been hired only a few days before the events with which we are concerned on a "contract basis" and that he abruptly terminated his employment on the Monday morning when the plaintiffs were forced to hire another firm to bring their trailer to Phoenix. Western Coach had no written records of this man's employment, was not able to give the name of the employee to the court, and throughout the trial this driver was referred to as "Bob," because he had this name sewn on the front of his shirt.

338

■ The first question raised on appeal is whether there was sufficient evidence to establish a contract of hauling between the plaintiffs and Western Coach. Though the Western Coach president, Mr. Max Morgan, testified that his employees were not authorized to enter into hauling contracts and that Western Coach had no license from the Arizona Corporation Commission to act as a contract hauler in this manner, the trial court found that there was ostensible authority to enter into this contract, which had been relied upon by the plaintiffs. We find ample evidence in the record to support this finding. *See* § 27, Restatement of Law of Agency (Second). As a matter of fact, during the trial, the defendant as much as admitted there was sufficient evidence in the record in this regard:

"THE COURT: You are not seeking to escape the consequences of Mr. Dunlop's [manager in Parker] acts?

"MR. JACOBOWITZ [Attorney for Western Coach]: *No, Your Honor.* We want to show what really happened, if we may. Our evidence, what we are trying to develop, really, is Mr. Dunlop had a little place there and he was wearing three hats at the same time, one of which was Western Coach Corporation. Just as a foundational question, I don't think it alters much." (Emphasis added)

The appellant next argues that the plaintiffs are not entitled to any damages for breach of contract. This argument is inapposite. This is not a contract action. Though it is material to the issues to know whether there was a contract of hauling, in order to establish the standard of care, and for such bearing as it may have upon the question of whether punitive damage may be allowed, this is not a breach of contract case. The allegations upon which liability is predicated clearly sound in negligence. *See* 1 Am.Jur.2d Actions § 32, at 567.

■ Western Coach complains that the compensatory damages were excessive. There is no merit to this contention. A witness called by the plaintiffs with extensive experience in trailer repairs testified it would cost in excess of $1800 to repair this damage. A witness called by the defendant testified that it could be repaired for $650. The court found damages in this respect of $1,200.[1] One of the prime purposes of having judicial machinery is to resolve conflicts such as this.

One of the contentions as to why punitive damages are improper is that there is no evidence that Western Coach authorized or ratified the conduct of "Bob" which resulted in this damage and discomfiture to the plaintiffs. There is a division of authority in this country as to whether a corporate employer can be held liable for punitive damages for conduct of a servant, when such conduct was neither authorized nor ratified. The Restatement of the Law of Agency (Second), § 217(C), and the Restatement of Torts, § 909, take the position that the employer is not liable in such a case, unless the servant was unfit and the principal was reckless in employing him or the servant was employed in a managerial capacity.

Many decisions diverge from this *Restatement* view, especially when the employer is a corporation. *See* 22 Am.Jur. 2d Damages § 261, at 355; 25 C.J.S. Damages § 125(4), at pp. 1153–1154.

■ We believe that our Supreme Court in Southern Pacific Co. v. Boyce, 26 Ariz. 162, 174–175, 176, 223 P. 116, 120 (1924), has placed Arizona in line with the authorities allowing punitive damages for acts of corporate employees so long as committed in the furtherance of the employer's business and acting within the scope of employment. Though it can be reasonably argued from language used in this decision that it was intended to apply to common carriers only, we find the reasoning, and

1. The court also allowed $50 for special living expenses incurred. Defendant does not challenge the amount of this award on appeal.

particularly the portions we now quote, to be sufficiently broad to be controlling here:

"The rule that if a servant or agent is engaged in the furtherance of his employer's business and acting within the scope of his employment exemplary or punitive damages for an injury due to his malicious and wanton acts may be allowed against the employer is founded on public policy and established by the weight of authority. In discussing the reason for the rule the Supreme Court of Kentucky in Louisville & Nashville R. [R.] Co. v. Ballard, 85 Ky. 307, 3 S.W. 530, 7 Am.St.Rep. 600, said:

" 'A corporation can act only through natural persons. It, of necessity, commits its business absolutely to their charge. They are, however, selected by it. In the case of a railroad, the safety and comfort of passengers is necessarily committed to them. They act for it. Its entire power, *pro hac vice*, is vested in them, and as to passengers *in transitu* they should be considered as the corporation itself. It is, therefore, as responsible for their acts in the conduct of the train and the treatment of the passengers as the officers of the train would be for themselves, if they were the owners of it. Public interests require this rule.'

\*    \*    \*    \*    \*    \*

"In a majority of the jurisdictions in which this question has been directly raised the holding has been that exemplary damages may be allowed against the corporation for injuries due to the wanton or malicious conduct of the servant, regardless of authorization or ratification, if his acts were such as to subject him to damages of this character."

26 Ariz. at 174–175, 176, 223 P. at 120.

■ Hence, we do not follow the *Restatement* view but examine the evidence to ascertain whether, taking into account the conduct of Bob, and the Western Coach manager at Phoenix, there was sufficient evidence for the court to have found "reckless indifference to the interests of others." Nielson v. Flashberg, 101 Ariz. 335, 341, 419 P.2d 514, 520 (1966). *See* Restatement of Torts § 908, Comment b.

■ In determining whether there is sufficient evidence to suport punitive damage, the evidence must be construed in the light most favorably to the position of the plaintiff. Southern Pacific Company v. Barnes, 3 Ariz.App. 483, 492, 415 P.2d 579, 588 (1966). Whether there is sufficient evidence of wanton negligence is a matter of taking the evidence as a whole and determining whether the element of recklessness is sufficiently "in the air" to support a submission. Newman v. Piazza, 6 Ariz.App. 396, 399, 433 P.2d 47, 50 (1967).

■ We are not inclined to reverse here on the grounds that reckless indifference to the rights of others is not sufficiently "in the air" of this evidence. There are no property interests more tender to the average citizen of this country than those rights pertaining to his home. In moving house trailers, when the personal belongings of the owner are left in the trailer, one is in effect moving a home on wheels. We see no point in again detailing the evidence. When all of it is considered, it is our view that there was sufficient evidence to indicate a reckless indifference to the rights of these plaintiffs.

Judgment affirmed.

HATHAWAY and KRUCKER, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E).