No. 95-187

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

LLOYD S. TILLETT and ABBIE TILLETT,
husband and wife; WILLIAM E. TILLETT;
and JOHN P. TILLETT; and LATAHNA ENTEL,

     Plaintiffs and Respondents,

  v.

NIKKI A. LIPPERT AND ROBERT R. TILLETT,
as CO-PERSONAL REPRESENTATIVES OF THE
ESTATE OF ROYCE E. TILLETT; MARIAN J.
TILLETT; NIKKI A. LIPPERT AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF KENNETH
LIPPERT; NIKKI A. LIPPERT; et al.,

     Defendants and Appellants.



FILED

JAN 08 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
                In and for the County of Carbon,
                The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

     For Appellants:

          Karl Knuchel (argued), Attorney at Law, Livingston,
          Montana

     For Respondents:

          Leonard H. Smith (argued), Bruce A. Fredrickson;
          Crowley, Haughey, Hanson, Toole & Dietrich,
          Billings, Montana

                          Submitted:  November 21, 1995

                            Decided:  January 8, 1996

Filed:

                              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

Defendants appeal from the Findings of Fact, Conclusions of Law and Judgment of the Montana Thirteenth Judicial District Court, Carbon County, partitioning real property and awarding compensatory and punitive damages against the estate of Kenneth Lippert. We affirm.

We restate the issues raised on appeal as follows:

1. Did the District Court err in modifying the partition recommendation of the referee?

2. Did the District Court err in awarding compensatory and punitive damages for assault against the Estate of Kenneth Lippert?

BACKGROUND

This case arises out of an acrimonious dispute between two branches of the Tillett family. The parties to this action are all members of the extended Tillett family and were all cotenants of approximately 240 acres in Carbon County, Montana, known as the "home place."

On February 27, 1991, plaintiff Latahna Entel was driving a vehicle along established roads on the "home place." Kenneth Lippert brandished, pointed and eventually discharged a loaded rifle at Latahna hitting her vehicle. At trial, Latahna claimed Kenneth's actions caused her apprehension of bodily injury and emotional distress.

Plaintiffs filed a complaint, seeking to partition the "home place," to quiet title, to obtain injunctive relief, and to recover damages for assault arising out of the February 27, 1991 incident.

2

On June 19, 1991, the District Court entered Findings of Fact, Conclusions of Law and a Preliminary Injunction. The Preliminary Injunction restrained the parties from harassing each other, from restricting access to the "home place," and prohibited the Lipperts from engaging in additional construction activities outside the "construction area." The District Court noted that it was "very much aware of the volatile nature of the relationship that . . . exist[ed] between the two family factions involved in this action." During the pendency of this action, and while the Preliminary Injunction was in effect, appellants continued to exclude respondents from portions of the "home place" in violation of the Preliminary Injunction.

To assist the District Court in equitably dividing the property, and by stipulation of the parties, the court appointed Dennis Warren as the single referee to recommend the partition of the "home place." The order appointing the referee stated that "the final report of the referee shall not be binding on the Court." In December 1992, Warren submitted a proposed Certificate of Survey to the court. He did not submit a report. Neither respondents nor appellants agreed with the Certificate of Survey proposed by Warren, accordingly, the partition action proceeded to trial.

Following a bench trial, the district judge personally toured the premises to be partitioned. The district judge found that the physical partition proposed by Warren was not an equitable partition because the proposed partition did not provide

3

respondents access to their federal lease land located north of the "home place." Accordingly, to equitably partition the property and to provide respondents access to the federal lease land, the District Court found a more equitable partition line for the northern boundary and directed that the line on the proposed Certificate of Survey be changed. The court also directed that a survey be made to obtain accurate legal descriptions of the partitioned parcels of property.

The District Court further found that Kenneth Lippert's conduct was outrageous and done with actual malice, and awarded both compensatory and punitive damages. The appellants filed a motion for a new trial and the District Court denied that motion. Thereafter, the appellants filed the instant appeal.

1. Did the District Court err in modifying the partition recommendation of the referee?

After hearing the evidence and touring the property, the district judge concluded that Warren's proposed partition was inequitable. In order to equitably divide the "home place," the district judge modified the northern boundary of the proposed partition to give respondents access to adjoining federal lease land.

In reviewing a district court's findings of fact in a partition action the applicable standard of review is whether the findings are clearly erroneous. Troglia v. Bartoletti (1994), 266 Mont. 240, 244, 879 P.2d 1169, 1171; Kravik v. Lewis (1984), 213 Mont. 448, 453, 691 P.2d 1373, 1375. A finding is clearly

4

erroneous when, although there is evidence to support it, a review of the record leaves the court with the definite and firm conviction that a mistake has been committed. Troglia, 879 P.2d at 1171.

Appellants argue that it was not within the district judge's discretion to modify the boundaries suggested by the referee. Appellants rely on DeHaan v. Gallatin-Madison Ranch (1991), 250 Mont. 304, 308, 820 P.2d 423, 426, for the proposition that the report of the referee is to be rejected only for reasons that would justify the reversal of a jury's verdict. In DeHaan, this court cited Ivins v. Hardy (1950), 123 Mont. 513, 518, 217 P.2d 204, 206 (Ivins II) for this proposition. See also Ivins v. Hardy (1958), 134 Mont. 445, 454, 333 P.2d 471, 475, *cert. denied*, 359 U.S. 1001 (1959) (Ivins III). We note that both Ivins cases, as well as DeHaan, borrow their holding that the referee's report should be rejected only for reasons that would justify the reversal of a jury's verdict from cases dealing with attorney discipline. Ivins III, 333 P.2d at 475 (citing In re McCue (1927), 80 Mont. 537, 261 P. 341; In re Lunke (1919), 56 Mont. 226, 182 P. 126). These disciplinary cases were not partition actions, nor did they apply the statute now codified at § 70-29-212, MCA.

Our holdings in Ivins II, Ivins III, and DeHaan, are contrary to § 70-29-212, MCA. Pursuant to § 70-29-212, MCA, the court may "confirm, change, modify, or set aside the report." As is clear from the statute, the district court has discretion in reviewing or adopting the report of the referee. Accordingly, we overrule Ivins

II, Ivins III, and DeHaan insofar as they hold that a referee's report is to be rejected by the district court only for reasons that would justify the reversal of a jury's verdict.

In the present case, referee Warren did not submit a report to the court as envisioned by § 70-29-211, MCA. This statute requires referees to:

> make a report of their proceedings, specifying therein the manner in which they executed their trust and describing the property divided and the shares allotted to each party with a particular description of each share.

Rather, he submitted only a proposed Certificate of Survey. Thus, it is clear from the record that there was no report for the District Court to either affirm, adopt or reject. Accordingly, it is unnecessary for this Court to determine whether there was substantial evidence to support a referee's report.

Partition is an equitable action in which the court has great flexibility in fashioning appropriate relief for the parties. Frame v. Frame (1987), 227 Mont. 439, 443, 740 P.2d 655, 658. Here, in the order appointing the referee, the district judge stated that he would not be bound by the report of the referee. Then, after hearing the testimony of the parties and reviewing the referee's proposed partition, the district judge toured the property before issuing his Findings of Fact, Conclusions of Law and Judgment. The goal of a partition action is to divide the property so as to be fair and equitable and to confer no unfair advantage on any of the cotenants. Frame, 740 P.2d at 658. Here, the District Court's findings are not clearly erroneous and there

6

is substantial evidence in the record to support the District Court's partition of the property. The District Court was acting well within its discretion, pursuant to § 70-29-212, MCA, when it modified the referee's proposed partition.

2. Did the District Court err in awarding compensatory and punitive damages for assault against the Estate of Kenneth Lippert?

In its Findings of Fact and Conclusions of Law Re: Assault and Battery and Malicious Destruction of Property, the District Court found that Kenneth Lippert's actions in pointing and shooting a loaded gun at Latahna Entel were irresponsible and outrageous. Latahna testified that Kenneth Lippert approached her vehicle, pointed the gun at her and fired seven shots at the wheels and tires. He then told her "get the hell out of there, Latahna, you've had it now" and ordered her out of the vehicle. The court awarded money for the damage to the vehicle as well as compensatory damages for the assault. In reviewing a district court's findings of fact, we determine whether they are clearly erroneous. Columbia Grain Int'l v. Cereck (1993), 258 Mont. 414, 417, 852 P.2d 676, 678. From the record, it is clear that there is substantial credible evidence to support the District Court's award of compensatory damages.

In addition, the court found that Kenneth Lippert's conduct was "outrageous and done with actual malice" and that his conduct should be punished and an example made thereof in order to discourage others from engaging in similar conduct in the future. Accordingly, the District Court awarded punitive damages in the

7

amount of $5,000 against the Estate of Kenneth Lippert. The Lippert estate contends that the punitive damage award should be reversed since Mr. Lippert died before the trial and, thus, no punitive purpose will be served by assessing his estate with punitive damages.

The question of whether punitive damages can be awarded against the estate of a deceased tortfeasor is one of first impression in the State of Montana. We note that, of the states that have addressed this issue, the majority have decided against awarding such damages. See Hofer v. Lavender (Tex. 1984), 679 S.W.2d 470 (setting forth a comprehensive analysis of the various state court decisions as of 1984); see also Jay M. Zitter, Annotation, Claim for Punitive Damages in Tort Action as Surviving Death of Tortfeasor or Person Wronged, 30 A.L.R.4th 707, 710-11 (1984). The Supreme Court of Wyoming recently held that public policy is not served by permitting recovery of punitive damages against the estate of a deceased tortfeasor since, once he is dead, he can no longer be punished and "punitive damages no longer have the desired effect." Parker v. Artery (Wyo. 1995), 889 P.2d 520, 525 (citing Jaramillo v. Providence Washington Ins. Co. (N.M. 1994), 871 P.2d 1343, 1351) (citations omitted). However, in light of Montana's survival act and dual purpose punitive damage statute, we reject the reasoning of those courts which have disallowed punitive damages against the estates of deceased tortfeasors.

At common law, a cause of action for assault and battery abated upon the death of a party. In Montana, that common law rule

8

has, however, been abrogated by statute. Section 27-1-501(1), MCA, provides that a cause of action or defense does not abate because of the death of a party. Rather, it survives and may be maintained by his representatives. It is well recognized in Montana that in a tort action, the death of the defendant does not abate the action. Simonson v. White (1986), 220 Mont. 14, 19-20, 713 P.2d 983, 986. Accordingly, there is no question but that the plaintiff's cause of action for assault survived the death of Kenneth Lippert. The question then becomes: was the award of punitive damages in addition to compensatory damages consistent with the policy of the State of Montana as expressed in statutory and case law?

It is clear from the statutory authorization that punitive damages serve a dual purpose in Montana. Section 27-1-220, MCA, provides:

> **Punitive Damages -- when allowed.** (1) Except as otherwise expressly provided by statute, a judge or jury may award, in addition to compensatory damages, punitive damages for the sake of example and for the purpose of punishing a defendant.

The plain language of the statute indicates that punitive damages serve two purposes: (1) to set an example, and (2) to punish the wrongdoer. The decisions of this Court further support the conclusion that punitive damages serve not only to punish, but also to set an example to the public for purposes of deterrence. Fitzgerald v. Western Fire Ins. Co. (1984), 209 Mont. 213, 215, 679 P.2d 790, 793; Miller v. Watkins (1982), 200 Mont. 455, 469, 653 P.2d 126, 132-33. Punitive damages should not be in excess of the

9

"amount necessary adequately to punish the defendant *and serve as an example to it and others.*" Dees v. American Nat'l Fire Ins. (1993), 260 Mont. 431, 448, 861 P.2d 141, 151 (citing Safeco Ins. Co. v. Ellinghouse (1986), 223 Mont. 239, 255, 725 P.2d 217, 227 (emphasis added)).

Obviously, as far as meting out punishment is concerned, Kenneth Lippert is now beyond the jurisdiction of this temporal Court. That fact, however, does not obviate the exemplary function of a punitive damage award. In requiring Kenneth Lippert's estate to respond in punitive damages, the District Court has chosen to send a message to the public at large that intimidation through the brandishing and discharging of firearms will not be tolerated.

We hold that, in Montana, punitive damages serve both to punish and to set an example. We reject the argument that punitive damages cannot be assessed against the estate of a deceased party. Whether it is appropriate to assess punitive damages against the estate of a deceased tortfeasor for purposes of setting an example is a question for the trier of fact to weigh in its deliberations.

Affirmed.

_____
Justice

We concur.

_____

_____

_____
Justices

10

Justice Charles E. Erdmann dissenting.

I concur with the Court's holding in Issue 1. However, I dissent from the majority's holding in Issue 2 that the District Court did not err in awarding punitive damages against the Estate of Kenneth Lippert. However reprehensible Mr. Lippert's conduct, under the plain language of § 27-1-220, MCA, and the rationale of a majority of jurisdictions which have examined this issue, punitive damages are not awardable against a tortfeasor's estate.

The majority has chosen to follow the reasoning of a very narrow minority--four out of thirty-one jurisdictions--to impose punitive damages on a tortfeasor's estate. See 98 Dick. L. Rev. 329, 333 (1994). The majority proclaims it has made an example of Kenneth Lippert in that one cannot escape punishment through death. Surely one who is not deterred by our criminal laws from engaging in outrageous conduct would likewise not be deterred by an award of punitive damages on his estate. Lohr v. Byrd (Fla. 1988), 522 So. 2d 845, 847. When through death the tortfeasor is not punished, the general deterrent effect is diminished. Hofer v. Lavender (Texas 1984), 679 S.W.2d 470, 478 (Spears, J., dissenting),

In the majority decision, this Court suggests that Montana's survival act and dual purpose punitive damage statute distinguish Montana from those jurisdictions which do not allow an award of punitive damages against an estate of a tortfeasor. This suggestion is inappropriate given that many of the courts which have disallowed such punitive damages have survival acts and dual

11

purposes behind an award of punitive damages as well. Nevada's state statutes allow for an award of punitive damages for "sake of example and by way of punishing the defendant." Nev. Rev. Stat. § 42.010. Nevertheless, in Allen v. Anderson (Nev. 1977), 562 P.2d 487, 489, its Supreme Court held that punitive damage claims do not survive the death of a tortfeasor.

The majority cites specifically to the Wyoming Supreme Court's decision in Parker v. Artery (Wyo. 1995), 889 P.2d 520, 525, where the Wyoming court chose not to impose punitive damages on an estate. Wyoming does not have a statute stating the purposes behind punitive damages, however, the state does have a survival act which provides that causes of action for injuries to person and property survive the death of a wrongdoer. Wyo. Stat. § 1-4-101. Even so, the Wyoming court denied punitive damages in a personal injury action against an estate because "[p]ublic policy is not served by permitting the recovery of punitive damages against the estate of a deceased tortfeasor." The Wyoming court recognized that "[t]he purpose of punitive damages is to punish the tortfeasor and deter that person from repeating the wrongful act in the future; [therefore], the reason for awarding punitive damages ceases to exist with the death of the tortfeasor." Parker, 889 P.2d at 525.

Florida also has a survival statute which provides that "[n]o . . . action shall die with the person." Fla. Stat. ch. 46-021.

12

The Florida Supreme Court, however, rejected the imposition of punitive damages on a decedent's estate stating that

> [s]eparation of the "punitive" and "exemplary" aspects of [an award for punitive damages] is unjustified because general deterrence logically depends upon the perception of punishment suffered by the wrongdoer. *When the punishment is diffused and unjustly inflicted upon the innocent, through a doctrine analogous to attainder, the deterrent effect is frustrated.* It is unrealistic to suppose that such awards deter other prospective tortfeasors, especially if the criminal laws fail to do so.

Lohr, 522 So. 2d at 846 (quoting Byrd v. Lohr (Fla. Dist. Ct. App. 1986), 488 So. 2d 138, 139).

Alaska's Supreme Court took similar notice of its state's survival statute which explicitly provided that plaintiff's causes of action survive against a defendant's estate. Doe v. Colligan (Alaska 1988), 753 P.2d 144 (referring to Alaska Stat. § 09.55.570). The court, however, denied an award of punitive damages based on the purposes behind such an award. The court concluded that

> [t]he concomitant goal of general deterrence depends significantly upon the punishment function of an award of punitive damages. Since the deceased tortfeasor cannot be punished, the general deterrent effect becomes speculative at best and thus, in our view, falls short of furnishing a justifiable ground for an award of punitive damages against the tortfeasor's estate.

Doe, 753 P.2d at 146.

New Mexico's Legislature adopted a jury instruction which provided that punitive damages are awarded for punishment of the defendant as well as the deterrence of others. Regardless, the state's supreme court declared that the deterrent effect of

13

punitive damages on others is inextricably tied to the punishment of the tortfeasor. "If the tort-feasor cannot be punished, it follows that there can be no general deterrence." State Farm Mut. Auto. Ins. v. Maidment (N.M. App. 1988), 761 P.2d 446, 449.

The Kansas courts have acknowledged the dual purpose of punitive damages in spite of no statutory language specifically stating those purposes. In Fehrenbacher v. Quackenbush (D. Kan. 1991), 759 F. Supp. 1516, 1521 (citing Wisker v. Hart (Kan. 1988), 766 P.2d 168), a federal district court acknowledged that while punitive damages are awarded to punish the wrongdoer, the ultimate purpose of punitive damages is to restrain and deter others from the commission of similar wrongs. Nevertheless, the court concluded that Kansas law does not permit an award of punitive damages against the estate of a wrongdoer when it "would vicariously punish the heirs of the wrongdoer and would not serve to deter potential tortfeasors." Fehrenbacher, 759 F. Supp. at 1521-22. In this case, the majority has failed in its attempt to distinguish the rationale and reasoning of the majority of jurisdictions which have considered this issue.

The majority cites to the Texas Supreme Court's holding in Hofer for its reasoning that a dual purpose for punitive damages is a sufficient reason to distinguish itself from the majority of jurisdictions refusing to impose punitive damages on an estate. See Hofer, 679 S.W.2d at 475. The Hofer court predicates its decision on case law which provides that punitive damages have a

14

purpose other than that of punishment and deterrence. Texas recognizes an award of punitive damages to compensate the plaintiff for remote losses such as inconvenience and attorney fees. Hofer, 679 S.W.2d at 474. The purpose of such compensation is not linked to the exemplary punishment of the defendant as is the purpose of deterrence. This Court, in Reintsma v. Lawson (1986), 223 Mont. 520, 525, 727 P.2d 1323, 1326, refused to award attorney fees and costs under the guise of punitive damages even though the Court determined that a punitive damage award was proper. It is therefore not appropriate for this Court to follow the reasoning in Hofer.

Moreover, the majority has ignored the plain language of the punitive damage statute and the legislature's use of the conjunctive "and." "[A] judge or jury may award . . . punitive damages for sake of example and for the purpose of punishing a defendant." Section 27-1-220, MCA (emphasis added). The conjunctive "and" is used when the legislative intent is that all requirements must be fulfilled in order to comply with the statute. Sutherland Stat. Const. § 21.14 (5th ed). The purpose of such an award is for both the punishment of the tortfeasor and deterrence of all others by example. Even if the majority is correct in its determination that an award of punitive damages against an estate will act as a deterrent, Kenneth Lippert is simply beyond temporal punishment and the dual requirements of § 27-1-220, MCA, cannot be met.

15

While under the plain language of the statute it is unnecessary to resort to the legislative history of § 27-1-220, MCA, a review of that history reflects the legislature's intent to preclude the award of punitive damages against estates. In discussing HB 363, which enacted the predecessor of § 27-1-220, MCA, the House Judiciary Committee acknowledged that "[p]unitive damages, being personal to the defendant, do not usually survive such defendant." 49th Cong. (1985), H. R. Jud. Comm. (Feb. 12), Exh. A-pg 4 (exhibit prepared and submitted by Rep. John Cobb). Although the statute was later amended, the language pertinent to this case was not changed.

Furthermore, a plain reading of § 27-1-220, MCA, provides that punitive damages are appropriate when the "defendant is found guilty of actual malice." In this case, the tortfeasor is dead and the defendant is the estate. The estate was not found guilty of any malice. Therefore, according to § 27-1-221, MCA, punitive damages against an estate would be inappropriate.

Certainly, deterrence is a legitimate purpose for an award of punitive damages. Nevertheless, it is the court's punishment of the tortfeasor which is the deterrence and no court can punish the dead. If the legislature had intended that punitive damages were to be awarded against estates, they could have easily so specified. In this opinion, we have usurped the role of the legislature and improperly legislated a major policy change. Under the majority's holding the innocent heirs are punished for the behavior of the

16

deceased tortfeasor.  I would reverse the District Court's holding awarding punitive damages for assault against the Estate of Kenneth Lippert.

_____
Justice

Chief Justice J. A. Turnage and Justice Karla M. Gray join in the foregoing dissenting opinion..

_____
Chief Justice

_____
Justice

17