31 P.3d 114

Devin HARALSON, Plaintiff,

v.

FISHER SURVEYING, INC., a Texas Corporation; Estate of Timothy Fisher, by and through David J. Fisher, Administrator of said Estate, Defendants.

No. CV–00–0006–CQ.

Supreme Court of Arizona.
En Banc.

Sept. 13, 2001.

Thompson, Montgomery & Cahill by Diana G. Montgomery, Globe, Attorneys for Plaintiff Haralson.

Goering, Roberts, Rubin, Brogna & Enos by Scott Goering, J. Cole Hernandez, Tucson, Attorneys for Defendants Fisher Surveying, Inc. and Estate of Timothy Fisher.

## OPINION

ZLAKET, Chief Justice.

¶ 1 The Honorable Alfredo C. Marquez of the United States District Court for the District of Arizona has certified two questions of Arizona law to this court, reformulated as follows:

1. Whether a claim for punitive damages survives the death of a tortfeasor and may be pursued against his or her estate?

2. Whether a corporate defendant can be held vicariously liable for punitive damages arising out of the tortious conduct of its now-deceased employee?

¶ 2 We have jurisdiction pursuant to Arizona Constitution art. 6, § 5(6), Arizona Revised Statutes § 12–1861 (1994), and Supreme Court Rule 27(a).

## Background

¶ 3 Timothy Fisher was the president and chief executive officer of Fisher Surveying, Inc. On December 10, 1996, he was driving southbound on Highway 191 in Graham County while in the course and scope of his employment. Several motorists· witnessed Fisher cross the road's center line and tried unsuccessfully to warn him with horns and flashing headlights. Unfortunately, he continued on his way, eventually colliding with a truck in which Haralson was a passenger. Fisher was killed in the accident and Haralson was injured. Fisher's body subsequently tested positive for the presence of amphetamines, benzodiazepine, and marijuana metabolites. Defendants admit that the deceased was at fault.

## Discussion

### 1. Estate Liability.

¶ 4 We first address whether punitive damages can be assessed against the estate of a deceased tortfeasor. The court of appeals confronted this issue thirty-one years ago in *Braun v. Moreno*, 11 Ariz.App. 509, 466 P.2d 60 (1970). In that case, both drivers were killed in the underlying collision. In refusing to permit an award of punitive damages against the wrongdoer's estate, the court noted that such damages "are not to compensate an injured person for the loss sustained, but to punish a defendant for his conduct. Since the deceased tortfeasor can in no way be punished by the award of punitive damages, we see no reason for allowing such damages to be assessed." *Id.* at 511–12, 466 P.2d at 62–63 (citation omitted).

¶ 5 We are not bound by the court of appeals' opinion. *Wilderness World, Inc. v. Department of Revenue*, 182 Ariz. 196, 200, 895 P.2d 108, 112 (1995). Moreover, because *Braun* failed to adequately consider the larger societal effects of punitive damage awards, we decline to follow its reasoning.[1]

---

1. The present case does not involve a claim for wrongful death. But because *Braun* was a wrongful death action, the dissent initially focuses on Ariz.Rev.Stat. § 12–613. *Infra* ¶¶ 33–34. Five years before *Braun* was decided, we held that punitive damages are recoverable under that statute, which permits the judge or jury to con-

sider "aggravating circumstances attending the wrongful act, neglect or default." *Boies v. Cole*, 99 Ariz. 198, 202, 407 P.2d 917, 920 (1965) (quoting Ariz.Rev.Stat. § 12–613).

Nothing in our wrongful death statutes expressly prohibits a punitive award against a deceased tortfeasor's estate. *See* Ariz.Rev.Stat.

¶ 6 The purpose of punitive damages has never been limited to punishment. At their inception, such damages were awarded "not only as a satisfaction to the injured person, but likewise as a punishment to the guilty, to deter any such proceeding for the future, and as proof of the detestation of the jury to the action itself." *Wilkes v. Wood,* 98 Eng.Rep. 489 (C.P.1763). Punitive damages have always served to set an example; hence, the terms "punitive" and "exemplary" are used interchangeably in our law. *See, e.g., Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986); 22 Am. Jur.2d *Damages* § 731 (1988).

¶ 7 Punishment, societal condemnation, deterrence, and public policy have been recognized in Arizona as valid grounds for assessing punitive damages. *See, e.g., Wyatt v. Wehmueller,* 167 Ariz. 281, 285, 806 P.2d 870, 874 (1991) (stating that such awards "punish reprehensible conduct") (citation omitted); *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 497, 733 P.2d 1073, 1080 (1987) (finding that exemplary damages are designed "to express society's disapproval of outrageous conduct and to deter such conduct by the defendant and others in the future"); *Linthicum,* 150 Ariz. at 330, 723 P.2d at 679 (stating that such damages are "to punish the wrongdoer and to deter others from emulating his conduct"); *Acheson v. Shafter,* 107 Ariz. 576, 578, 490 P.2d 832, 834 (1971) (declaring that "[p]unitive damages are allowed on grounds of public policy").

¶ 8 We recognize that a majority of jurisdictions do not permit such damages to be awarded against a deceased tortfeasor's estate. *See G.J.D. v. Johnson,* 552 Pa. 169, 713 A.2d 1127, 1129 (1998) (surveying state statutes and cases); *see also* Restatement (Second) of Torts § 908 cmt. a (1977) ("Punitive damages are not awarded against the representatives of a deceased tortfeasor nor, ordi-

narily, in an action under a death statute.").[2] Like the dissent, these courts argue that the primary purpose of punitive damages—punishment—is not advanced when the tortfeasor is deceased. *Doe v. Colligan,* 753 P.2d 144, 146 (Alaska 1988); *Thompson v. Estate of Petroff,* 319 N.W.2d 400, 408 (Minn.1982); *Allen v. Anderson,* 93 Nev. 204, 562 P.2d 487, 489–90 (1977) (quoting *Braun,* 11 Ariz.App. at 511–12, 466 P.2d at 62–63). They also suggest that, in allowing punitive damages against the deceased's heirs, innocent parties are punished. *Lohr v. Byrd,* 522 So.2d 845, 846 (Fla.1988); *State Farm Mut. Auto. Ins. Co. v. Maidment,* 107 N.M. 568, 761 P.2d 446, 449 (Ct.App.1988), *aff'd by Jaramillo v. Providence Washington Ins. Co.,* 117 N.M. 337, 871 P.2d 1343, 1352 (1994). Finally, they claim it is speculative to conclude that such an award has a deterrent effect on others. *Colligan,* 753 P.2d at 146; *Lohr,* 522 So.2d at 846.

¶ 9 There are, however, jurisdictions allowing recovery of exemplary damages from a deceased tortfeasor's estate. In Alabama, the state's wrongful death statute was long ago interpreted to permit punitive damages based on a general deterrence rationale. *Shirley v. Shirley,* 261 Ala. 100, 73 So.2d 77, 85 (1954). Relying on that reasoning, the Fifth Circuit has held that recovery of punitive damages against estates in Alabama is not limited to wrongful death actions. *Ellis v. Zuck,* 546 F.2d 643, 644–45 (5th Cir.1977).

¶ 10 Texas permits the imposition of punitive damages for many reasons besides punishment—to set an example for others; to reimburse for inconvenience, attorneys' fees, and other losses outside the normal realm of compensatory damages; and to serve the overall public good. *Hofer v. Lavender,* 679 S.W.2d 470, 474–75 (Tex.1984). In addition to punishment and deterrence, West Virginia

---

§§ 12–611 to –613. Thus, *Braun* rests on case law from other jurisdictions, primarily *Barnes v. Smith,* 305 F.2d 226 (10th Cir.1962) (reasoning that because punishment is no longer possible when a tortfeasor is deceased, punitive damages are inappropriate). *See Braun,* 11 Ariz.App. at 511–12, 466 P.2d at 62–63.

**2.** "[A]lthough we generally follow the Restatement absent statutes or cases to the contrary, we

will not do so blindly." *Barnes v. Outlaw,* 192 Ariz. 283, 285, 964 P.2d 484, 486 (1998); *see also Villareal v. State Dep't of Transp.,* 160 Ariz. 474, 479, 774 P.2d 213, 218 (1989) (recognizing child's consortium claim despite Restatement rule that does not); *infra* ¶ 24 (reflecting Arizona's rejection of the Restatement view limiting *respondeat superior* liability for punitive damages).

**4**

utilizes exemplary damages to provide additional compensation for victims of reckless and wanton conduct. *Perry v. Melton,* 171 W.Va. 397, 299 S.E.2d 8, 12–13 (1982).

¶ 11 In *Tillett v. Lippert,* 275 Mont. 1, 909 P.2d 1158 (1996), the Montana Supreme Court sustained a punitive award against an estate, relying on both case law and a statute which provides that "a judge or jury may award ... punitive damages for the sake of example...." *Id.* at 1162 (quoting Mont. Code Ann. § 27–1–220). The Pennsylvania Supreme Court has similarly upheld the imposition of exemplary damages against an estate based on principles of fairness and general deterrence. *G.J.D.,* 713 A.2d at 1131 ("To allow a tortfeasor's estate to escape payment of punitive damages would be comparable to the injustice of allowing a defendant to transfer his wealth to his prospective heirs and beneficiaries prior to the trial of a case in which punitive damages are sought against him.").

¶ 12 An Illinois appellate court enforced an award of punitive damages against a deceased's estate in *Penberthy v. Price,* 281 Ill.App.3d 16, 216 Ill.Dec. 902, 666 N.E.2d 352 (1996). Like the instant case, *Penberthy* dealt with an intoxicated driver who crossed the center line and collided with the plaintiffs' vehicle. The Illinois court permitted survival of the punitive damage award based on general deterrence and the "strong public policy against mixing alcohol and automobiles." *Id.,* 216 Ill.Dec. 902, 666 N.E.2d at 356–57.

▆ ¶ 13 We find the reasoning in these cases to be most persuasive. We also recognize the obvious—that it is impossible to punish or deter the decedent in this case, and that his acts resulted in a far more serious penalty than any court or jury could mete out. Nevertheless, without making a judgment concerning the advisability of exemplary damages here, we conclude that there are situations in which it would be appropriate, and perhaps even necessary, "to express society's disapproval of outrageous conduct" by rendering such an award against the estate

of a deceased tortfeasor. *Hawkins,* 152 Ariz. at 497, 733 P.2d at 1080; *see also Caron v. Caron,* 577 A.2d 1178, 1180 (Me.1990) (stating, in a spousal and child abuse case, that the "primary purpose of punitive damages is to 'express society's disapproval of intolerable conduct and to deter such conduct where no other remedy would suffice' ") (internal punctuation and citation omitted); *Linscott v. Rainier Nat'l Life Ins. Co.,* 100 Idaho 854, 606 P.2d 958, 961 (1980) (finding that the purpose of exemplary damages "is not to compensate the plaintiff, but to express the outrage of society at certain actions of the defendant"). Examples such as terrorist attacks or bombings, mass murders, and serial killings immediately come to mind. It is difficult to understand why the assets of those who perpetrate such atrocities and then die should be shielded from punitive damage liability.

¶ 14 We do not suggest, however, that today's holding is limited to such extreme conduct.[3] We rely on the good sense and wisdom of judges and juries to decide which fact situations are serious enough to call for punitive awards against an estate, subject always to the narrow guidelines we have previously established with respect to such damages. *See Thompson v. Better–Bilt Aluminum Prods. Co., Inc.,* 171 Ariz. 550, 555–57, 832 P.2d 203, 208–10 (1992) (demanding clear and convincing evidence); *Rawlings v. Apodaca,* 151 Ariz. 149, 161–63, 726 P.2d 565, 577–79 (1986) (requiring, as a predicate, an "evil hand" being guided by an "evil mind" which "either consciously sought to damage the [victim] or acted intentionally, knowing that its conduct was likely to cause unjustified, significant damage").

¶ 15 While a punitive award cannot punish a deceased wrongdoer for his or her reprehensible conduct, it may "deter its future occurrence" by others. *Wyatt,* 167 Ariz. at 285, 806 P.2d at 874 (quoting *International Bd. of Elec. Workers v. Foust,* 442 U.S. 42, 48, 99 S.Ct. 2121, 60 L.Ed.2d 698 (1979) (citation omitted)). The rule we embrace sends a forceful message that a person's

---

3. We note, for example, that Arizona's "public policy of deterring drunk driving," *Del E. Webb Corp. v. Superior Court,* 151 Ariz. 164, 170, 726 P.2d 580, 586 (1986), denounces the type of conduct described in this case. *See* Ariz.Rev. Stat. § 28–1381 (Supp.2000).

assets may not be insulated by the happenstance of death. Although ordinarily earmarked for the decedent's heirs, such assets may be required to satisfy both compensatory and punitive damage awards flowing from his or her wrongdoing. We see nothing unjust in this principle.

¶ 16 There is no logical reason why courts should allow a punitive award against a defendant who survives a judgment, but deny it where death occurs earlier. Suppose, for example, two individuals commit equally culpable and outrageous acts. One is comatose and, for all practical purposes, has no reasonable chance of recovery. The other is dead. Is there a way to explain why the unconscious tortfeasor would have his assets exposed to punitive liability, while the deceased's estate would be immunized from it? Surely the answer does not lie in our inability to punish the dead wrongdoer.

¶ 17 If there is to be a difference in legal treatment, it should be established by the legislature. Just as that body expressly terminated recovery for pain and suffering upon the death of tort *victims, see* Ariz.Rev.Stat. § 14–3110 ("Every cause of action ... shall survive the death of the person entitled thereto or liable therefor ... provided that upon the death of the person injured, damages for pain and suffering of such injured person shall not be allowed."),[4] it could have spoken directly to the damages issue before us. However, it has not done so.

¶ 18 The dissent's suggestion that we should interpret the legislature's silence as approval of the holding in *Braun, infra* ¶ 33, is off the mark and ignores our own well-established precedent. As Justice Martone explained in *Southwestern Paint & Varnish Co. v. Arizona Dep't of Envtl. Quality,* 194 Ariz. 22, 25, 976 P.2d 872, 875, ¶¶ 20–21 (1999),

The dissent contends that the legislature's acquiescence in *Herzberg[ v. David,* 27 Ariz.App. 418, 555 P.2d 677 (1976)]* is suggestive of legislative intent. The argu-

ment is without merit for two independent reasons. First, the principle of legislative acquiescence applies only where a statute has been construed by the court of last resort, not an intermediate appellate court. *Calvert v. Farmers Ins. Co. of Arizona,* 144 Ariz. 291, 297, 697 P.2d 684, 690 (1985) ("*Owens* and progeny, however, were decided by the Court of Appeals, and not the court of last resort in this state, the Arizona Supreme Court. Thus, this principle has no application to the case at bar."). Similarly, *Herzberg* and its progeny were decided by the court of appeals and not this court. As noted, this is a case of first impression for us.

Second, even if the principle were applicable, it is limited to instances in which the legislature has considered and declined to reject the relevant judicial interpretation. *Lowing v. Allstate Ins. Co.,* 176 Ariz. 101, 106, 859 P.2d 724, 729 (1993). *We have squarely rejected the idea that silence is an expression of legislative intent. Id.* (Emphasis added); *see also, Summerfield v. Superior Court,* 144 Ariz. 467, 478, 698 P.2d 712, 723 (1985) ("While legislative inaction following an authoritative opinion by this court may militate in favor of defendant's position, the same is not true when the matter in question has never been before this court.").

¶ 19 The tortfeasor's estate is entitled only to what the law affords—nothing more. Whatever the heirs may hope to inherit is generally contingent upon the obligations incurred by the deceased during his or her lifetime. *See* Ariz.Rev.Stat. § 14–3101 (1995); *In re Estate of Foreman,* 99 Ariz. 147, 150, 407 P.2d 102, 104–05 (1965) (stating that the "interest of the heirs is subject to the payment of the debts of the estate"). The legislature has never said that liability for exemplary damages arising from a decedent's outrageous behavior is an exception to this rule, or that such exposure is automatically terminated upon the death of the tortfeasor.

4. This statute is patently indifferent to the adverse financial effect it may have on a victim's clearly innocent estate and heirs by extinguishing what could be a significant damage claim. Thus, the dissent's concern for the estate and heirs of

an evil wrongdoer who causes considerable harm, *infra* ¶ 38, may not accurately reflect the thinking of a legislature which has chosen to remain silent on the subject.

¶ 20 Because punitive damages can serve as both an example and a deterrent to others in the community, we hold that there is no *per se* prohibition against their imposition upon a decedent's estate. Such an award is peculiarly within the province of the *trier of fact. Acheson,* 107 Ariz. at 579, 490 P.2d at 835. Adequate safeguards exist, and should be utilized, to protect against arbitrary, exorbitant, or otherwise improper verdicts. Jurors should be instructed to consider all aspects of fairness and justice in deciding whether, and in what amount, to award punitive damages. This would include the value of the estate and hardship to the heirs. *Hawkins,* 152 Ariz. at 497, 733 P.2d at 1080. The jury should also be reminded of its right to decline a punitive verdict altogether. Moreover, the parties are free to argue the reasonableness and advisability of such an award. Thus, an estate is placed in the same position as any other defendant against whom a punitive award is sought.[5]

¶ 21 Finally, if a verdict is "so manifestly unfair, unreasonable and outrageous as to shock the conscience of the Court," the judge can grant a remittitur or new trial. *Acheson,* 107 Ariz. at 579, 490 P.2d at 835 (quoting *Young Candy & Tobacco Co. v. Montoya,* 91 Ariz. 363, 370, 372 P.2d 703, 707 (1962)); *see also Sheppard v. Crow–Barker– Paul No. 1 Ltd. P'ship,* 192 Ariz. 539, 549, 968 P.2d 612, 622 (Ct.App.1998).

## 2. Employer Liability.

¶ 22 We now turn to whether a corporate defendant can be held vicariously liable for exemplary damages arising from the acts of a deceased tortfeasor-employee. In *Wiper v. Downtown Dev. Corp. of Tucson,* 152 Ariz.

309, 732 P.2d 200 (1987), this court granted review "to clarify the relationship between punitive damages and the doctrine of respondeat superior." *Id.* at 310, 732 P.2d at 201. We held that when both an employer and employee are named as defendants in a lawsuit, "an award of punitive damages against an employer is improper where no punitive damages have been awarded against the employee and the employer's liability is based solely on the doctrine of respondeat superior." *Id.* at 312, 732 P.2d at 203. In other words, "[i]f an employee's conduct does not warrant recovery of punitive damages against himself, it can not serve as a basis for such recovery against an employer." *Id.* at 311, 732 P.2d at 202.[6]

¶ 23 When a judge or jury finds for an employee on the issue of punitive damages, as in *Wiper,* the employer may only be held liable if its own independent tortious conduct is involved. *Wiper,* 152 Ariz. at 312, 732 P.2d at 203; *see also Ford v. Revlon, Inc.,* 153 Ariz. 38, 42, 734 P.2d 580, 584 (1987); *Torres v. Kennecott Copper Corp.,* 15 Ariz.App. 272, 274–75, 488 P.2d 477, 479–80 (1971). There is, however, no allegation of independent misconduct by Fisher Surveying in this case. Therefore, if this employer is to be held liable, it must be solely upon principles of *respondeat superior.*

¶ 24 Under the Restatement, the absence of independent wrongdoing on the part of the employer would generally prevent any recovery of exemplary damages.[7] *Restatement (Second) of Torts* § 909 (1977); *Restatement (Second) of Agency* § 217C (1957); *see, e.g., Smith's Food & Drug Ctrs., Inc. v. Bellegarde,* 114 Nev. 602, 958 P.2d 1208, 1214 (1998); *Brashear v. Packers,* 118 N.M. 581, 883 P.2d 1278, 1280 (1994). However, "Ari-

---

5. The dissent claims that the estate is at a disadvantage because the tortfeasor is dead. *Infra* ¶ 38. But that disadvantage exists any time a party is deceased, and applies equally to claims for compensatory and punitive damages. Moreover, because both compensatory and punitive awards have the clear potential of diminishing an estate and depriving "innocent" heirs of their inheritance, a difference in treatment on such a ground is difficult to justify.

6. It is important to note that *Wiper* does not prevent an award of punitive damages against an

employer when the employee's behavior merits such liability, nor does it preclude vicarious liability in cases where only the employer is sued. *See, e.g., Southern Pac. Co. v. Boyce,* 26 Ariz. 162, 223 P. 116 (1924).

7. Even the Restatement, however, would allow an employer to be found liable for punitive damages if the decedent was "employed in a managerial capacity and was acting in the scope of employment." *Restatement (Second) of Torts* § 909(c).

zona has specifically rejected the Restatement view in favor of a rule allowing punitive damages against an employer for acts of its employees 'so long as committed in the furtherance of the employer's business and acting within the scope of employment.'" *Wiper*, 152 Ariz. at 310, 732 P.2d at 201 (quoting *Western Coach Corp. v. Vaughn*, 9 Ariz.App. 336, 338–39, 452 P.2d 117, 119–20 (1969)); *see also Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 502, 647 P.2d 629, 633 (1982); *Boyce*, 26 Ariz. at 174, 223 P. at 120.

¶ 25 This rule governing vicarious punitive liability is not predicated on the employee being alive when a lawsuit is brought; it is sufficient that, when the tort was committed, the employee was performing his or her job. Such a result is justified because "an employer receives some economic benefit from the employee's labor and specifically. defines for the employee the scope of employment." *Jacobson v. Superior Court*, 154 Ariz. 430, 432, 743 P.2d 410, 412 (Ct.App. 1987).

¶ 26 We therefore answer both questions posed by the District Court in the affirmative.

CONCURRING: STANLEY G.
FELDMAN, Justice.

JONES, Vice Chief Justice, specially concurring:

¶ 27 I join the majority on the issues before the court; I write this additional note, however, to make the following observation.

¶ 28 Today's opinion, in my view, adds a much needed dimension to the common law. I understand the reluctance of our dissenting colleagues to hold a tortfeasor's estate liable in exemplary damages where the tortfeasor himself is dead and the heirs are innocent of wrongdoing. But, I find unpersuasive the argument that death, as opposed to survival, of a tortfeasor engaged in outrageous conduct should make a difference. Where general deterrence, as here, is a prime factor, exemplary relief makes sense.

¶ 29 This case involves a highway collision in which the tortfeasor, driving his vehicle in a drugged stupor, killed himself and injured his victim. Interestingly, had he survived the crash with full, permanent mental disability, he would be "alive" but unable to function. In that case, the dissent, of necessity, would be compelled under its rationale to accept the position announced today by the majority of the court. To me, a distinction based solely on survival of the tortfeasor makes no sense. It is his conduct that justifies exemplary relief, not whether he survives his own malfeasance.

¶ 30 The majority does not "upend" a traditional rule, as suggested by the dissent, but rather sustains a far more fundamental principle—that the common law lives and responds to human experience. The instant case calls to mind the ancient maxim—*Experientia Per Varios Actus Legem Facit*—which means "Experience by various acts makes law." BLACK'S LAW DICTIONARY 688 (4th ed.1951). Mr. Justice Holmes, writing on the subject, commented, "The life of the law has not been logic; it has been experience." Oliver Wendell Holmes, Jr., The Common Law 1 (1881). If we cannot learn after having experienced the often tragic results of reckless, wanton conduct, indeed we all become victims of our own misfortune.

¶ 31 When a person, as here, engages in behavior so egregious as to drive a motor vehicle in a drugged or drunken state, resulting in the death or injury of innocent people, he or she must recognize that the decision to drive in that condition may result in placing everything on the line, even if solely as a reminder to others so tempted.

McGREGOR, Justice, concurring in part and dissenting in part:

¶ 32 Until today, Arizona's justice system upheld the basic and essential principle that we do not punish an innocent party for another's wrongdoing. Because today's holding that punitive damages may be assessed against the estate of a deceased tortfeasor upends that principle, I respectfully dissent.

¶ 33 More than thirty years ago, the Arizona Court of Appeals asked whether, in a wrongful death action against a deceased tortfeasor, the legislature intended that punitive damages be recoverable. *Braun v. Moreno*, 11 Ariz.App. 509, 511, 466 P.2d 60, 62

(1970). Construing Arizona Revised Statutes (A.R.S.) section 12–613 in light of the purposes of punitive damages, the court concluded that the legislature did not intend to permit punitive damages in those circumstances: "Since the defendant tortfeasor can in no way be punished by an award of punitive damages, we see no reason for allowing such damages to be assessed." 11 Ariz.App. at 512, 466 P.2d at 63. During the three decades since that decision, the legislature has not chosen to amend section 12–613 to permit recovery of punitive damages from the estate of a deceased tortfeasor.

¶ 34 The majority asserts that if an estate and a wrongdoer are to be treated differently, the difference in treatment should come from the legislature. *Supra* ¶ 17. I agree. But the legislature's failure to amend either section 12–613 or Arizona's survival statute, A.R.S. section 14–3110, to permit recovery of punitive damages against an estate, in light of Arizona's long-standing judicial interpretation prohibiting such an award, provides a clear indication that the legislature did not intend to permit a plaintiff to recover such damages.[8]

¶ 35 Although the majority disregards *Braun* because it is a decision of the court of appeals, *supra* ¶ 18, the Restatement view, which we usually apply, echoes the approach taken by the *Braun* court. "Absent Arizona law to the contrary, this court will usually apply the law of the Restatement." *Ft. Lowell–NSS Ltd. P'ship v. Kelly,* 166 Ariz. 96, 102, 800 P.2d 962, 968 (1990). Without explanation, the majority also fails to follow that accepted approach. The Restatement expressly provides that in survival actions, "the death of the tortfeasor terminates liability for punitive damages." Restatement (Second) of Torts § 926(b) (1979); *see also* Restatement § 908 cmt. a (no punitive damages against representative of deceased tortfeasor in a death action). Finally, in adopting a strictly minority view, the opinion rejects the rea-

soned judgment of the substantial majority of jurists who have considered this issue. *See G.J.D. v. Johnson,* 552 Pa. 169, 713 A.2d 1127, 1129 (1998) (surveying state court decisions).

¶ 36 Punitive damages are not simply another form of compensatory damages. Rather, they constitute quasi-criminal fines imposed upon defendants in a civil action. Our reason for imposing such damages is that society regards the defendant's conduct as outrageous and morally reprehensible. *Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, ——, 121 S.Ct. 1678, 1683, 149 L.Ed.2d 674 (2001). The purposes served by punitive damage awards include punishment, specific deterrence, and general deterrence. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) (stating punitive damages are "private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence"); *Linthicum v. Nationwide Life Ins. Co.,* 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986) (stating that punitive damages are designed "to punish the wrongdoer and to deter others from emulating his conduct"); *see, e.g., Acheson v. Shafter,* 107 Ariz. 576, 578, 490 P.2d 832, 834 (1971) (punitive damages "are awarded for the avowed purpose of punishing the wrongdoer for his intentional misconduct and they also act as a deterrent to further wrongdoing"). The majority concedes that assessing punitive damages against an estate serves neither the punishment nor specific deterrence function of punitive damages. *Supra* ¶ 13. The majority goes on to reason that punitive damages are appropriate when imposed against the tortfeasor's estate because the imposition of punitive damages "may" deter future wrongdoing by others. *Supra* ¶ 15. I regard that rationale as a slender basis for the broad consequences of today's holding.

¶ 37 Notably, the majority presents no concrete data that would permit us to weigh the

---

8. Most of the states the majority cites in support of its holding based their own holdings on statutory text that, unlike Arizona's, explicitly permits recovery of punitive damages against the estate of a deceased tortfeasor. *See Shirley v. Shirley,* 261 Ala. 100, 73 So.2d 77, 79 (1954) (interpreting Ala.Code 1940 tit. 7, § 119, renumbered as

Ala.Code § 6–5–462 (2000)); *Tillett v. Lippert,* 275 Mont. 1, 909 P.2d 1158, 1162 (1996) (relying on Mont.Code Ann. § 27–1–501 (2000)); *Hofer v. Lavender,* 679 S.W.2d 470, 472 (Tex.1984) (interpreting Tex.Rev.Civ. Stat. Ann. art. 5525, now codified at Tex. Civ. Prac. & Rem.Code Ann. § 71.021 (Vernon 1997)).

likelihood that imposing punitive damages against an estate will deter future conduct by persons unrelated to the action in question. As most jurisdictions recognize, any general deterrence that emanates from punitive damages "depends significantly upon the punishment function of an award of punitive damages." *Doe v. Colligan,* 753 P.2d 144, 146 (Alaska 1988). The possibility that someone who is undeterred by criminal laws or the prospect of personal liability will be deterred from driving while under the influence because a jury awarded punitive damages recoverable from another impaired driver's estate is remote at best. Because the general deterrence effect of a punitive damage award under those circumstances is so nebulous, that goal simply does not justify the award.

¶ 38 Balanced against this nebulous and speculative benefit stands the certain risk that the award will punish not the tortfeasor but heirs who are entirely innocent of any wrongdoing. The majority justifies that outcome by noting that "an estate is placed in the same position as any other defendant against whom a punitive award is sought." *Supra* ¶ 20. But that statement does not accurately describe the estate's position. As already noted, unlike other parties subject to punitive damages, the estate has committed no reprehensible act. In addition, unlike a living defendant, the estate cannot defend itself against the allegation of outrageous conduct. In this case, the tortfeasor's inexcusable conduct seems clear; in other factual situations, the precise nature of the conduct that allegedly gives rise to punitive damages will be less clear. What will always be true is that the deceased tortfeasor will not be available to give his version of the facts that gave rise to the lawsuit, the estate will lack knowledge essential to defend the claim against it, and the award will punish a party that has done no wrong.

¶ 39 Perhaps recognizing the underlying inequity of punishing an estate for the behav-

ior of the decedent, the majority asserts that the trial court can utilize adequate safeguards to protect against improper verdicts and can instruct the jury "to consider all aspects of fairness and justice in deciding whether, and in what amount, to award punitive damages." *Supra* ¶ 20. I am uncertain just what instructions the trial judge can give to accomplish those results. Surely the judge may not instruct the jury to decide whether punitive damages may be awarded against an estate, for that is the legal issue we decide today. If the judge instructs the jury as our earlier decisions advise, he will tell the jury to consider, in assessing punitive damages, the defendant's financial position, the nature of the defendant's conduct and the harm that occurred from the defendant's conduct, the duration of the misconduct, the defendant's awareness of the harm or risk of harm, any concealment by the defendant of the harm, and the profitability of the defendant's action. *Hawkins v. Allstate Ins. Co.,* 152 Ariz. 490, 497, 733 P.2d 1073, 1080 (1987). The only one of those factors remotely relevant when the estate, not the wrongdoer, is the defendant will be the value of the estate. The estate, as defendant, engaged in no reprehensible behavior, caused no harm to occur, had no awareness of any risk of harm, and did not profit from the decedent's actions. May the jury, then, award punitive damages if the estate's financial condition reaches some threshold amount? Or should the trial judge instruct that the jury can consider both the nature of the decedent's conduct and the innocence of the estate and decide which status is more important in a particular action? If the jury can weigh those matters, then an award of punitive damages reflects the jury's conscious decision to punish an innocent party for the misconduct of another. I cannot agree that a vague hope of deterring outrageous behavior justifies such a departure from long-held principles.[9]

9. The parties have not discussed whether imposing punitive damages upon an innocent party violates the Eighth Amendment to the United States Constitution, which prohibits excessive fines and cruel and unusual punishment. Because the degree of a defendant's culpability is one factor relied upon by the Supreme Court to determine whether a punitive damages award violates the Eighth Amendment, *see Cooper Indus., Inc. v. Leatherman Tool Group, Inc.,* 532 U.S. 424, ———— ————, 121 S.Ct. 1678, 1684–85, 149 L.Ed.2d 674 (2001), today's decision surely raises that question.

¶ 40 My disagreement with the majority's reasons for assessing punitive damages against a tortfeasor's estate does not extend to its reasons for assessing punitive damages against the deceased tortfeasor's employer. The employer still exists to be punished and specifically deterred, and others, witnessing its punishment, may be deterred from allowing their employees to commit similar torts. I concur with the court's decision on the second certified question.

CONCURRING: FREDERICK J. MARTONE, Justice.